Battle. J.
 

 It is now clearly settled in this State, that a voluntary conveyance of her property made by a woman in contemplation of a marriage which afterwards takes place, is a fraud upon the husband, if he be not apprised of the existence of the deed;
 
 Logan
 
 v. Simmons, 3 Ire. Eq. Rep. 487;
 
 Bailey
 
 v. Tisdale, 6 Ire. Eq. 358; and
 
 Strong
 
 v.
 
 Menzies,
 
 Ibid, 544. In adopting this principle, we are only following the rule which has been laid down in England, and sanctioned in several of
 
 *407
 
 our sister States; see, among other cases,
 
 Taylor
 
 v. Pugh, 1 Har. 608,
 
 Ramsey
 
 v. Joyce, 2 McMul. Eq. 237,
 
 Mones
 
 v. Parrant, 2 Rich. Eq. 404,
 
 Tucker
 
 v. Andrews, 3 Shep. (Me.) Rep. 124. The counsel for the defendant admits the existence of the general doctrine, but denies its application to the present case, because, as he alleges, the husband was informed of the execution of the deed, and assented to it before the marriage. The question, then, is one mainly of fact, whether the allegation of the husband’s knowledge of, and assent to, the bill of sale executed by his intended wife, before the marriage, is sufficiently ¡Droved by the testimony. In the examination of the proofs taken in the cause, we are at once struck by the discrepancy in the statements of the witnesses as to the time when the marriage between the plaintiff’s testator and the defendant Mary Gibbs (then Mary Harris,) took place, and as to the interval between the execution of the deed and that event; and it turns out that we get from Mary Gibbs only, the true time of her marriage, and from the date of the deed itself, the only reliable time of its execution. Erom these sources we learn that the deed was executed on the 26th day of March, 1851, and the marriage was consummated the
 
 next
 
 day, to wit, on the 27th day of the same month. The testimony-relied upon to show that the intended husband knew of the existence of the deed, and gave his assent to it before his marriage, is not at all satisfactory upon that point. The defendant Mary Gibbs is the only person who pretends to speak 'with any precision upon the subject, and she gives us two accounts of it, one in her answer, and another in her deposition taken by the other defendant under an order of the Court. These accounts cannot well be reconciled with each other, and, of course, leave us in doubt which is the true one, if indeed either can be relied on as entirely accurate.
 

 In her answer she say's that, “ after the conveyance had been made, and about-days before the marriage, the said Wilson Gibbs, having been informed of it, asked her if it was true that she had made such a conveyance. She replied to him that it was true, and told him fully how it was. To this
 
 *408
 
 lie replied that it made no difference at all; that he had not desired to marry her with any view to her property ; that he •had enough of his own, and, at his death, would provide for her a good home.” In her deposition, (which only, and not her answer, can be used by the other defendant as testimony,) she does not say that she told her intended husband that she had already executed the deed, but uses the following language:
 
 “
 
 I had a conversation with Mr. Gibbs about a week before our marriage, relative to mv conveying my negroes to Peters C. Spencer, (the Other defendant.) lie told me that he had heard, from Col. Benjamin Watson, that I had conveyed my negroes to Peters Spencer. I told him I was agoing to do so. lie then said it made no difference with him ; to give them to him if I wished; that it was not my negroes he wished to marry me for; that he had enough of his own, and, when he died, lie would leave me a house and home.” The deposition of Col. Benjamin Watson is on file, and he says, on this subject, that “a short time before the marriage, say a week, a, conversation took place between myself and others in the presence of Wilson Gibbs, when it was remarked by B. J. Bonner, that Mary Harris had conveyed her negroes to some ■one, and Wilson Gibbs shook his head and said, no.”
 

 The discrepancy between the answer and the deposition of Mary Gibbs (upon which the plaintiffs have a right to rely, for the purpose of impeaching the accuracy of her statements) and the improbability that Col. Watson gave the information to Wilson Gibbs, as to what she said the latter told her he did, would, of itself, incline us to doubt whether Wilson Gibbs ever did know of the existence of the deed. He had, no doubt, heard of the rumor which prevailed, that his intended wife was about to convey her slaves to some person before her marriage; but we are satisfied, from subsequent occurrences, that he did not believe the report, and that he lived and died in ignorance that the deed in question ever had been executed. We are almost certain that the existence of the deed was carefully concealed from him during his life. It was executed, as we have already stated, on the 26th day of
 
 *409
 
 March, 1851; was proved for registration before a Judge, who lived at a distance from the county, on tire 26th day of November, 1852; and was not registered until the 15th of February, 1856, after the death of the husband. In the meantime the husband had the possession of the slaves, and bequeathed a part of them to the widow, and the others to some of his children. It is true, that he had a right to the possession, under the deed, on account of the life-estate reserved therein to his wife ; but his bequest of them, in his will, can be accounted for upon no other suppositiomthan that he claimed them as his own, and thought that they belonged to him by virtue of his intermarriage with their former owner.
 

 Supposing it, then, to be established that the husband had heard, before his marriage, that the woman whom he was about to marry, intended to transfer her slaves, by a deed of gift, to another person, and had even said that it would make no difference to him if she did, would those circumstances prevent a deed from being void, as a fraud upon his marital rights, if it were executed in secret, and its existence kept concealed from him during his life? We are clearly of opinion that an instrument, executed under such circumstances, cannot be supported. There must be a knowledge of, and assent to, the particular deed, to give it the effect of barring the rights of the husband. Or, in the language of Mr. Noper, which seems to be quoted with approbation by this Court in the above cited case of
 
 Logan
 
 v. Simmons, “ Any disposition by the wife, made after the courtship began, without the intended husband’s knowledge and concurrence, is within the mischief and principle laid down by the courts.” 1 Rop. on Hus. and Wife, 163. And, in reason it ought to be so. By the marriage, the parties acquire valuable reciprocal interests in each other’s property. If the wife survive the husband, she will become entitled to dower in his lands, and a certain portion of his personal estate, of which he cannot deprive her by his will; and during the coverture she has a claim for a comfortable support, suitable to the amount of his property and her station in life. So, the husband acquires rights in her
 
 *410
 
 property, varying in its kind and circumstances, as whether real or personal, in possession or in action. Now, until the marriage, the legal title remains in the wife, and she may dispose of it as she pleases. But if, after a courtship begins, the1 court of equity recognises an inchoate right in the intended husband at all, it follows that it cannot be disposed of by the intended wife without his direct knowledge and acquiescence. In a case like the present, there is no place for a constructive notice. That is always resorted to for the purpose of preventing the person who has it, from doing an act to the injury of another. Here, the husband can injure no other person, lie has rights which the rule protects, by preventing another person from injuring him.
 

 Upon the whole, we are decidedly of opinion, that nothing has been shown, on the part of the defendants, to prevent the plaintiffs from having the relief which they seek, and they may have a decree accordingly.
 

 Pek CuRiAM, Decree accordingly.