*261
 
 PeaesoN, C. J.
 

 The plaintiff, and Mrs. Gillespie, had entered into an agreement to marry, and the day for its solemnization was fixed. Three days before the time fixed, for the wedding, her father induces her to convey all of her property, except the negro woman, in whom she had but a life-estate, to the defendant, Lueco M. Gillespie, her infant son, who was before sufficiently well provided for, by his father’s will. After procuring this conveyance, the father still determined to prevent the marriage if he could. He starts off with her to Virginia. In Davie county, at the house of .a relative, she becomes too much indisposed to proceed on the journey. The plaintiff goes there, and has an interview, and learns from her the fact that she had been induced to execute the eonvejmnce of her property to her son. Both the plaintiff and Mrs. Gillespie still insist that the marriage should take place. "Whereupon, she goes back home with her father, and the marriage is solemnised shortly thereafter.
 
 >
 

 Roper, in his treatise on Husband and Wife, vol. 1, page 164, upon an examination of the eases, comes to this conclusion , * “It is presumed, therefore, that
 
 without the consent
 
 of the intended husband, the law will not permit any disposition of the wife’s property to be made before the marriage then in ■contemplation, and that, under no circumstances, .after a treaty of marriage has commenced, will any such voluntary disposition of her property be binding on her subsequent husband. In the absence of other evidence of fraud, the time when the disposition or settlement was made, most decide its ■validity, and attention to this circumstance, will, as it is presumed, reconcile the principal cases.” This passage in Roper lias been cited by this Court, with approbation in several cases, but it was never before necessary to decide the precise point, which is now presented, i. e. does notice of the conveyance made by the wife, imparted to the husband at any time before the marriage is solemnised, defeat bis right to have the '■conveyance set aside? Or, is it necessary, íd order to bind 'siim, that, after receiving notice, he .should concur, and
 
 give
 
 
 *262
 

 his consent
 
 thereto-, which is usually done by his signature on the conveyance?
 

 Spencer
 
 v.
 
 Spencer,
 
 3 Jones’ Eq. 404, after reciting the passage from Boper, and making a reference to the other cases in which it is cited- with approbation, is put on the ground that the notice is vague and indefinite.
 
 Taylor
 
 v. Rickman, Busb. Eq. 278, where the husband actually signed the conveyance, is put on the ground of surprise, because the paper was presented to him after the parties had met together for the purpose of being married.
 

 The question,depends on the time when the disposition or settlement is made, and the principle is this, if a woman,
 
 before she has-, a marriage in
 
 contemplation, gives away her property, the man, who afterwards marries her, has no ground of complaint on which he can stand before this Court, although he married, expecting to get the property, and without notice of the disposition previously made by her.
 

 After the courtship has
 
 begun, that is, after the man has signified his intention to address tlie woman, and before the matter is concluded by her acceptance of the proposition, if she give away her property, and he has notice thereof, and still proceed in his courting, the disposition is binding upon him, although he did not concur and give his consent; because, at the time of his notice, he was not committed by a contract to marry, and his equity can only be put on the ground that he was
 
 deceived,
 
 which is repelled by the naked fact of notice, as, in an action of deceit, in the sale ofj a horse, where it is-proved that the vendee has notice of the defect before the-trade was closed.
 

 After the co-uHship or negotiation, about and concerning the-mam-iage^ is concluded,
 
 and the parties bind themselves by a contract to marry, neither can give away his or her property without the consent, of the other, and the matter does not then rest upon a mere question of
 
 deceit,
 
 which may be repelled by proof of notice, but involves a question of
 
 fraud
 
 on aright vested by force of a contract, for a breach of which an action will lie at law; although a court of Equity will not enforce a
 
 *263
 
 specific performance, for a reason growing out of its peculiar nature, i. e. if the parties are unwilling, they cannot be forced to live together as man and wife should do; so, a specificper-formance is impracticable; and the Court declines the jurisdiction, on the same ground that it will not attempt to make parties proceed under a contract to carry on business as co-partners in merchandise, because, without mutual good will and readiness on both sides, the object cannot be accomplished; still, there is a valid contract, embracing in its consequences, the property of each of the parties ; for, as is said in Roper,
 
 supra,
 
 163, the
 
 wifd s fortune,
 
 in addition to his own, may be a weighty consideration and inducement for entering into the contract,” and of course, after the contract to marry is concluded, she cannot convey her property without his concurrence, and if she does, the person taking it with notice, will be converted into a trustee, in order to prevent a fraud on the contract.
 

 In our case, the father of Mrs. Gillespie, at whose instance the conveyance was made, and who was acting as the self constituted
 
 proahien ami
 
 of her infant son, had notice, and, indeed, procured her to make it for the express purpose of defeating the lights of the plaintiff vested by force of the contract to many.
 

 The ground mainly relied on, by Mr. Boyden; for the defendant, to wit, that the conveyance was for a valuable consideration is not tenable, for several reasons. We have seen that it was made with full notice of a pre-existing contract, and with the purpose of defeating it. In respect to the several articles of furniture bought by Mrs. Gillespie, her saying “that^she intended to give them to her son,” amounts to nothing, and has no legal effect. In respect to the land and slaves, the alleged arrangement, not being in writing, was not valid or obligatory in Law or Equity, and, at most, the amount of it was, that her specific legacy should abate rateably with that of her son, and she was to make good by fair contribution any abatement of his legacy caused by the sale of a slave given to him instead of one given to her — taking into consideration
 
 *264
 
 the fact that the legacy to him was contingent upon the event of his arriving at the age of twenty-one, with a limitation over to her, if he died under that age, and the legacy to her was for life, with a limitation over to the son, if he arrived at full age. So, that this understanding can, in no sense, be treated as a valuable consideration to support the absolute conveyance, which she was induced to make to her son, on the eve of her expected marriage, and it must be treated as mere security for any balance which, upon a final settlement of the estate, may appear to be due by reason of a necessity for an abatement of the specific legacies, taking into consideration the value of the legacy to her, and the legacy to her son, under the will of the testator.
 

 There is still another view on which the ground taken by Mr. Boyden, is not tenable. ¥e are satisfied, by the evidence, that Mrs. Gillespie did not execute the conveyance voluntarily, and of her own accord. She did so under moral, if not physical duress, and, consequently, the conveyance -is inoperative, and of no effect. The testimony of the subscribing witness establishes the actual constraint, and, if it be said he is a man of notoriously bad character, the reply is, that “he was selected by the father;” so, he cannot object on account of bad character; for, if so, there is no proof of the execution of the deed., and there is room for the imputation that such a witness was selected because the father did not choose to have a credible witness who could speak of the constraint and duress imposed on his daughter. If to this, be added the fact, that the conveyance was executed at the instance of a father by a daughter, whose business he had charge of, who was living in his family, and wholly dependent on him, and who, having agreed to marry a man to whom her father had objections, was willing, in almost any way, to propitiate his favor, and the further fact, that after all these concessions made by her, and the deeds were signed according to his dictation, she is, on the next day, but two days before the day fixed on for her marriage, constrained by her father to start on a journey to "Virginia, which purpose she defeated, at the house of a re-
 
 *265
 
 latiou, by indisposition, either actuator feigned, whereby her intended husband is enabled to overtake them, clearly makes out a case of duress.
 

 The plaintiff is entitled to a decree, setting aside the conveyances as in fraud of his contract to marry, except so far as to give them effect as a security for any abatement, which, in a settlement of the estate, it may appear her legacy was liable to, in order to meet her rateable part of the debts of the testator, which, although not relied on in the bill, as a distinct ground for relief, is relevant, in reply to the allegation that the conveyance was for valuable consideration.
 

 PeR CceiaM, Decree accordingly.