MARIA ARNEGAARD *vs.* KNUDT O. ARNEGAARD, *et al.*

Opinion filed May 11th, 1898.

### Husband and Wife—Secret Ante Nuptial Deeds.

After engagement, and on the eve of his marriage to a second wife, the
prospective husband deeded to his son by a former wife his homestead. The
transfer was kept secret. The deed was not recorded, and the wife was ignor-
ant thereof. The purpose of the grantor was to prevent the homestead right
of the wife in the land from vesting in her on their marriage. As an induce-
ment to the woman to marry him, he proposed to build on the homestead a
substantial dwelling. *Held*, that the deed was fraudulent, in law and in fact,
as to her homestead right, and therefore void as to it. But the deed is not
void in toto.

### Fraudulent Transfer of Homestead.

The fact that the husband could, after marriage, have destroyed her homestead
right in the property by changing his place of residence is no reason for taking
the case out of the rule that a secret antenuptial transfer by the husband is
void as to the wife; for after marriage the husband's control over the home-
stead would have been not absolute, but limited,—a husband having no power
to devest the wife of her homestead right by deed or will, but only by removal
from the premises. The consideration that the wife's homestead right is more
fragile than that of her dower right at common law affords a strong reason
why the courts should guard more jealously her interests, against the secret
devices of her husband to defraud her of such right.

### Transfer to Son—Inheritance of Personal Property.

It is no answer to the charge of fraud that the transfer was only a reasonable provision for the son, as the husband, if he would, by making such a provision, strip his wife of all possible interest in his property (she having no fixed interest therein under the statute of distribution,) must act openly, and inform his intended wife of such purpose before the marriage. The duty of honest disclosure of the fact to his future spouse is paramount to the duty of making provision for his offspring. The fact that the wife will receive a portion of her husband's personal estate does not render the fraudulent transfer valid, no matter how large a sum she may so receive.

### Delivery to Take Effect on Death of Grantor.

Where a deed is delivered to a third person, to be delivered to the grantee on the death or the grantor, such delivery transfers the title to the grantee, subject to the life interest of the grantor in the land.

### Acceptance of Transfer.

While an acceptance is an essential element in a delivery of a deed, yet if the grantee, after learning that a deed has been delivered to a stranger for his benefit, accepts the same, such acceptance relates back to the time of the original delivery, when the rights of third persons are not involved. When the deed is beneficial to the grantee, as when the land is given to him by the grantor, the acceptance of the grant is presumed.

### Declarations in Favor of the Grant Competent.

To make the delivery of a deed to a third person, to be delivered to the grantee on the death of the grantor, sufficient to transfer the title, it must appear that he intended then and there to part with all control over the deed, and to leave it with the third person as the agent of the grantee; otherwise the instrument will be testamentary in character, and therefore void as a deed. But, when it is once established that an absolute delivery was intended, the fact that the grantor acquired possession of the deed, or that he destroyed it, is immaterial. After such delivery, he has no more connection with the title to the land than one who never owned it. Acts and declarations of the grantor subsequent to the time of the alleged delivery, in hostility to the deed, are incompetent as against the grantee. But acts and declarations in support thereof are admissible, because they are adverse to the interests of the only person who at the time has any interest in overthrowing such deed.

### Evidence Sustains Finding.

Evidence reviewed, and *held* to sustain the finding of delivery.

### County Court Cannot Try Question of Title.

A county court, acting as a probate court, has no jurisdiction to try a question of title to property, as between the personal representative of a decedent, and a person claiming in hostility to the estate. Accordingly, *held* that where a proceeding which was instituted in such court to compel the administrator to place certain lands upon the inventory resulted in a judgment that such lands did not form part of the estate, such judgment constituted no bar to an

action brought to have certain deeds of such lands set aside as not having been delivered by the decedent, although the grantees in such deeds were parties to the proceeding in the county court.

**Jurisdiction of District Court on Appeal.**

> As the county court had no jurisdiction to try the question of title, the District Court obtained none by an appeal from the order of the county court.

Appeal from District Court, Traill County; *Pollock,* J.

Action by Maria Arnegaard against Knudt O. Arnegaard, Ole O. Arnegaard, Martinus O. Arnegaard, and Maria O. Lee, heirs, and H. J. Nyhus, special guardian of Albert O. Arnegaard, Annetta Arnegaard, Andrew Arnegaard, Oscar Arnegaard, Emma Arnegaard and Mabel Arnegaard, heirs and minor children of Ole O. Arnegaard, deceased, to have deeds of certain lands declared void as to her. Defendants had judgment, and plaintiff appeals.

Modified.

*Swenson & Norman,* and *John F. Selby,* for appellant.

The deed was never delivered to or accepted by the grantee, hence never became operative. *Prutsman* v. *Baker,* 30 Wis. 644; *Bank* v. *Balihouse,* 4 Pac. Rep. 106; *Hibberd* v. *Smith,* 4 Pac. Rep. 473, 8 Pac. Rep 46; *Fisher* v. *Hall,* 41 N. Y. 416; *Fain* v. *Smith,* 12 Pac. Rep. 365; *Fitch* v. *Bunch,* 30 Cal. 208; 5 Enc. L. 445; *Hathaway* v. *Payne,* 34 N. Y. 106; *Comer* v. *Baldwin,* 16 Minn. 172. The deed must be delivered during the lifetime of the grantor. *Parrott* v. *Avery,* 159 Mass. 594; *Reichert* v. *Wilhelm,* 50 N. W. Rep. 19; *Young* v. *Guilbean,* 3 Wal. 636; *Jackson* v. *Phipps,* 12 Johns 418; *Heyes* v. *Boylang,* 141 Ill. 400; *Bemison* v. *Aiken,* 102 Ill. 284; *Parmelee* v. *Simpson,* 5 Wall. 86. Placing a deed in the hands of a third person is not a good delivery unless the grantor parts with his dominion over the deed. If the grantor continues till his death to have the right to recall the deed from the depository, there is no delivery. *Baker* v. *Haskell,* 47 N. H. 479; *O'Connor* v. *O'Connor,* 69 N. W. Rep. 676. The assent of the grantee is necessary to a good delivery. Section 3520, Revised Codes. This is copied from California. Section 1059, Civil Code of Cal.; *Hibbard* v. *Smith,* 4 Pac. Rep. 478. If the grantor

reserves the right to recall or retake the deed, there is no delivery. *Stinson* v. *Anderson*, 96 Ill. 373; *Porter* v. *Woodhouse*, 59 Conn. 568; *Weisinger* v. *Cock*, 67 Miss. 511; *Wilson* v. *Wilson*, 158 Ill. 567; *Tyler* v. *Hall*, 106 Mo. 313; *Bury* v. *Young*, 98 Ill. 446; *Schuffert* v. *Grote*, 88 Mich. 650; *Bovee* v. *Hinde*, 135 Ill. 137; *Fain* v. *Smith*, 14 Or. 82; *Lang* v. *Smith*, 37 W. Va. 725. The deed in controversy was in possession of the deceased at his death, this puts the burden of proving delivery upon the grantee. *Tyler* v. *Hall*, 106 Mo. 313. The presumption is that the deed was placed in Hyde's possession as the agent for the grantor. *Hale* v *Joslin*, 134 Mass. 310; *Ball* v. *Foreman*, 37 Ohio St. 132. The deed to Knudt O. Arnegaard of the homestead was fraudulent as to the homestead rights of the plaintiff. Such transfers after the agreement to marry without the consent of the prospective husband or wife are void. *Petty* v. *Petty*, 4 B. Monroe, 215; *Swaine* v. *Perine*, 5 Johns. Ch. 482; *Cranson* v. *Cranson*, 4 Mich. 230; *Pomeroy* v. *Pomeroy*, 54 How. Pr. 228; *Killinger* v. *Reidenhauer*, 6 Serg. and R. 534; *Green* v. *Green*, 34 Kan. 740; *Hall* v. *Carmichael*, 8 Baxt. 211; *Freeman* v. *Hartman*, 45 Ill. 57; *Posten* v. *Gillispie*, 5 Jones, Eq. 258; *Tucker* v. *Anderson*, 13 Me. 124; *Baker* v. *Jordan*, 73 N. C. 145.

*Carmody & Leslie*, and *Cochrane & Feetham*, for respondents.

The delivery of the deed to Mr. Hyde passed the title, and the fact that the grantor in his life time regained possession of the deed does not defeat the title already passed. *Bury* v. *Young*, 33 Pac. Rep. 339; *Whittenbrock* v. *Cass*, 42 Pac. Rep. 300; *Crabtree* v. *Crabtree*, 42 N. E. Rep. 487; *Brown* v. *Westerfield*, 66 N. W. Rep. 439; *Denzler* v. *Reckholl*, 66 N. W. Rep. 147; *Trask* v. *Trask*, 57 N. W. Rep. 841; *Gish* v. *Brown*, 33 At. Rep. 60; *Crooks* v. *Crooks*, 34 Ohio St. 610; *Hatch* v. *Hatch*, 6 Am. Dec. 67; *Wallace* v. *Harris*, 32 Mich. 481; *Hatheway* v. *Payne*, 34 N. Y. 92; *Brown* v. *Brown*, 4 Fed. Cases, No. 1994. At common law a voluntary conveyance by either party to a marriage contract of his or her entire property, without the knowledge of the other and just

prior to the marriage was a fraud, this is not the law today. *Butler* v. *Butler*, 21 Kan. 521, 30 Am. Rep. 441; *Green* v. *Green*, 10 Pac. Rep. 156; *Hamilton* v. *Smith*, 10 N. Y. 276; *Small* v. *Small*, 42 Pac. Rep. 327.

CORLISS, C. J.   Plaintiff is seeking a decree adjudging void as to her a certain deed of real property executed by Ole O. Arnegaard to his son Knudt O. Arnegaard without any other consideration than the natural love of a father for his own offspring.  The validity of the deed is assailed on two grounds:   Plaintiff claims that it was never delivered, and that it was in fraud of her rights as the propective wife of the grantor.   At the time this conveyance was executed, the grantor, who was a widower with a large family of children, was engaged to the plaintiff, and their marriage took place a couple of months later.   The grantee in the deed is one of the grantor's children by his former wife.   Assuming, for the purpose of discussing the question of fraud, that there was in fact a delivery of the deed, we are confronted with the inquiry whether there is anything in the circumstances of this case which takes it out of the general rule that the owner of property can make an honest disposition thereof to whomsoever he pleases.   As before stated, it is urged by counsel for the plaintiff that the transfer of the land to the son was a fraud upon her rights, and that the deed is void in his hands because he is not a purchaser for value, but merely the object of his father's bounty.   The basis of this claim is that upon marrying the grantor she would have secured a homestead right in this land, had it not been conveyed to the son before her marriage with the grantor, and that this conveyance made after her engagement to the grantor (the fact of such conveyance being concealed from her) must consequently be deemed to have been made for the purpose of defeating her rights, and therefore, in law, a fraudulent conveyance, with respect to her homestead right.

It must be admitted that there has grown up a peculiar doctrine with reference to transfers of property by husband or wife after engagement.   In its original form, this doctrine was not

obnoxious to criticism. But it has, in its late developments, seriously encroached upon settled legal principles. It was not anomalous for a court to hold that a secret transfer by the wife before marriage was, in law, a fraud upon the husband's rights, because by marriage he was compelled to shoulder the burden of her debts. He might well insist that the wife, who had unloaded upon him the weight of her obligations, should not be permitted by a secret transfer to devest herself of the property out of which such debts ought in fairness to be paid. An agreement for marriage at common law was, in effect, an agreement for a sale by the prospective wife to the prospective husband of all her personal property, and the transfer to him of her right to possession of all her real estate, on condition of the assumption by him of all her debts. Liability for her debts being unescapable, it was rightly deemed fraudulent for the woman, after engagement, secretly to devest herself of the very property which should pass to the husband as an equivalent for the obligations he was forced to assume. See *Chandler* v. *Hollingsworth*, 3 Del. Ch. 99. The chancellor says, at page 106: "Let us consider the first question. The English court of chancery has, from the earliest times, protected the marital rights of the husband against a fraudulent settlement by the wife pending a treaty of marriage. It is considered that he becomes a purchaser of the wife's property, in consideration of the charge he assumes, of her maintenance and the payment of her debts; that this is a right upon which fraud may be committed, and which ought to be protected. Lord Thurlow, in *Strathmore* v. *Bowes*, I Ves. Jr. 27. This view has commanded universal consent from the beginning." In *Butler* v. *Butler*, 21 Kan. 521, Judge Brewer says: "Now, at common law, the husband, by marriage, assumed responsibility for all his wife's debts, became also the owner of her personal property, and entitled to the use, rents, and profits of her real estate. Marriage therefore contemplated, on his part, both the assumption of responsibility and the acquisition of property." In *Strathmore* v. *Bowes*, I Ves. Jr. 28, Lord Thurlow says: "The law conveys the

marital rights to the husband, because it charges him with all the burdens which are the consideration he pays for them; and therefore it is a right upon which fraud may be committed, and out of this right arises the rule of law that the husband shall not be cheated on account of his consideration." But when this rule was made applicable to the case of a conveyance of land by the man contemplating marriage, without any reference to the question of actual fraud, the courts appear to have taken a somewhat radical step. It is obvious, however, that the peculiar favor with which the right of dower was regarded by the common law accounts for this extension of the doctrine. Of course, we are not now considering the case of an actual fraud upon the wife, as when she is induced to marry, relying upon the husband's representation that he is the owner of particular property, which he has in fact conveyed to another. Under such circumstances a case of actual fraud would be established. We are dealing with the broad doctrine that, without any reference to the knowledge of the wife that the husband was the owner of the property conveyed, she can overthrow his deed thereof (the grantee not having paid value) by showing that it was made after their engagement, and that she was ignorant thereof at the time of the marriage. Whatever view may have formerly been held, it has become settled law in these later days that the purpose to deceive and defraud the other prospective spouse is imputed to the one who makes the antenuptial transfer, and conceals the fact until after marriage. Originally it was doubted whether, even in the case of a transfer by the woman, the husband could question the transaction without showing actual fraud. In *Chandler* v. *Hollingsworth*, 3 Del. Ch. 99, the chancellor said: "But until a recent date the doubt has been as to what circumstances should be held to render the settlement fraudulent; whether there must have been some misrepresentation or deception practiced upon the husband, such as amounts to actual fraud, or whether mere nondisclosure was sufficient, as a fraud in law, to invalidate the

settlement; especially whether mere nondisclosure should be fatal where the husband was at the time of the marriage ignorant as well of his wife's having held the property, as of its having been disposed of away from him." But ever since the decision of the court in *Goddard* v. *Snow*, 1 Russ. 485, decided by the master of the rolls in 1826, it has been the rule that a secret transfer of property by a prospective wife, is as a matter of law, fraudulent and void, without any reference to the husband's knowledge that the woman was the owner of the property. *Chandler* v. *Hollingsworth*, 3 Del. Ch. 99; *Tucker* v. *Andrews*, 13 Me. 124; *Logan* v. *Simmons*, 38 N. C. 487; *Spencer* v. *Spencer*, 56 N. C. 404, 409; *Poston* v. *Gillespie*, 58 N. C. 258; *Ramsay* v. *Joyce*, 1 McMul. Eq. 236; *Manes* v. *Durant*, 2 Rich. Eq. 404; *Taylor* v. *Pugh*, 1 Hare, 608; *Linker* v. *Smith*, 15 Fed. Cas. 561; *Duncan's Appeal*, 43 Pa. St. 67. See, also, *Freeman* v. *Hartman*, 45 Ill. 57.

How the doctrine which in the beginning related exclusively to transfers by the wife came to be extended in all its breadth to cases of transfer by the husband, it is difficult to determine, if principle is to be our guide. It is a significant fact that in England, where the doctrine had its origin, the wife's right of dower has never been successfully asserted as against an antenuptial conveyance by her husband. The question does not appear to have been directly decided in that country. In *Chandler* v. *Hollingsworth*, 3 Del. Ch. 99, the chancellor says, at pages 114 to 116: "It was argued by the defendant's counsel that in England dower is not protected, as a marital right, against a conveyance by the husband before the marriage, even though made on the eve of marriage, and expressly to exclude the wife; that under the English decisions the husband and wife, in this respect, stand on a different footing. There is no decision upon the precise question, but the weight of opinion is in favor of the position taken. Prior to the statute of uses, estates were largely held in trust; and it was, from the beginning, considered that dower did not attach to a use, even when it was one reserved to the husband under a conveyance made by himself. Whether a conveyance with a use

reserved to himself by the husband, made on the eve of marriage, and with the express purpose of barring dower, was at that period held to be effectual, does not appear by any decided case. The case *Ex parte Bell*, I Glyn & J. 282, cited in I Rop. Husb. & Wife, (32 Law Lib.) 354, note, that a voluntary settlement made by the husband, though set aside as fraudulent against creditors, prevents his wife's right of dower, cannot be taken as a decision upon the question, since it does not appear whether the settlement was made pending a marriage treaty. The dicta on this point are conflicting. Lord Chief Baron Gilbert is reported to have said that such a conveyance would be fraudulent as to the wife. 4 Cruise, Dig. 416; I Rop. Husb. & Wife, (32 Law Lib.) 354, note. In I Cruise, Dig. 411, and in 4 Cruise, Dig. 416, it is laid down that a secret conveyance by the husband, in trust, before marriage, to defeat dower, is void; and the whole doctrine as to antenuptial settlements by the wife is expressly applied to conveyances by the husband made under like circumstances. On the other hand, Lord Hardwicke, in *Swannock* v. *Lyford*, Amb. 6; *Id.*, Co. Litt. 208a. note I, also reported fully in Park, Dower, 382, treats it as admitted 'that if a man, before marriage, conveys his estate privately, without the knowledge of his wife, to trustees, in trust for himself and his heirs in fee, that will prevent dower.' Upon this authority, Park, Dower, 236, so lays down the rule. So, also, does I Washb. Real Prop. 161. After the statute of uses, which converted all uses into legal estates, and so admitted dower to attach to them, another mode of avoiding the inconveniences of dower was resorted to, by the practice of settling jointures in lieu of dower. By a statute of 27 Hen. VIII., which was passed to remedy the inconvenient effect of the statute of uses as to dower, the husband was authorized to settle upon his intended wife, before the marriage, a jointure, which, if reasonable, was held effectual as an equivalent for dower, and barred it, even though made without the wife's privity; the courts of equity reserving the power to relieve the wife against a jointure unfair or merely illusory. Such, after much controversy,

was the construction finally given to this statute in *Earl of Buckingham* v. *Drury*, 3 Brown, Parl. Cas. 492, cited in 1 Rop. Husb. & Wife, 477. The effect was that dower, under the English system, became a precarious, and, in the case of large estates, an infrequent, mode of provision for the wife; and hence its value as a marital right, and the importance of protecting it, was the less appreciated. Marriage was not presumed to have been contracted in expectation of it, unless upon representations to the wife that she would become entitled to it. This may account for what otherwise must appear as an unjust discrimination made by the English courts of equity, in withholding from the wife such protection as is given to the husband against secret antenuptial settlements. Such a reason is suggested in the note to 1 Rop. Husb. & Wife, 354."

Whatever may be the law in the mother country, the decisions are practically unanimous on this side of the water that the mere fact that a secret transfer was made after engagement is, with an exception to be hereafter referred to, conclusive on the question of fraud, so far as the right of dower is concerned. It is true that in some of the cases the element of actual fraud was shown to have existed, and some of the rulings are placed upon that ground. *Kelley* v. *McGrath*, 70 Ala. 75; *Jones* v. *Jones*, 64 Wis. 301, 25 N. W. Rep. 218; *Brown* v. *Bronson*, 35 Mich. 415; *Smith* v. *Smith*, 6 N. J. Eq. 515; *Green* v. *Green*, 34 Kan. 740, 10 Pac. Rep. 156; *Petty* v. *Petty*, 4 B. Mon. 215; *Jenny* v. *Jenny*, 24 Vt. 324. But in the great majority of the cases the broad rule is enunciated that a man owes to the woman to whom he is betrothed the utmost good faith, and that he cannot, consistently with that sacred obligation, secretly devest himself of property in which she would by the marriage secure rights which would thereafter be beyond his control. On the proposition that a secret transfer of his real property is, except under special circumstances, fraudulent as a matter of law, as to her dower right, we cite the following cases: *Davis* v. *Davis*, 5 Mo. 183; *Swaine* v. *Perine*, Johns. Ch. 482; *Chandler* v. *Hollingsworth*, 3 Del. Ch. 995 ; *Youngs*

v. *Carter*, 50 How. Prac. 410, affirmed on appeal in 10 Hun. 194; *Cranson* v. *Cranson*, 4 Mich. 230; *Pomeroy* v. *Pomeroy*, 54 How. Prac. 228. See *Gainor* v. *Gainor*, 26 Iowa, 337; *Thayer* v. *Thayer*, 14 Vt. 107. Many of the cases which make an exception in favor of a reasonable provision for children treat of the transaction as fraudulent in all other cases, without reference to the intention of the party who makes the transfer.

While the extension of the earlier rule to cases involving dower grew, in a measure, out of the peculiar regard which the common law paid to that right, yet the foundation of these decisions is the violation of the husbands duty to act with the utmost good faith towards his prospective bride, in dealing with his property after the marriage engagement. It therefore follows that the fact that dower has been abolished in this state is not in itself decisive against the right of this plaintiff to assail as fraudulent the conveyance of the homestead to the defendant Knudt O. Arnegaard. The inquiry still remains whether she, upon becoming the wife of the grantor, would have secured such an interest in the land, on which he lived, and on which he continued to reside up to the time of his death, as should be protected against a secret transfer after engagement, and before marriage. If the statute did not give a surviving widow a homestead right in the land of her deceased husband which formed their homestead at the time of his death, we could not on sound principle, hold that the secret transfer of this land would in any manner constitute a fraud upon the plaintiff. In this state dower and curtesy are abolished. Neither husband nor wife has any interest in the property of the other. Each has the absolute power of disposition, whether by transfer during life, or by will at death, subject only to the homestead right of the survivor. Were it not for such homestead right, the plaintiff would have no ground for complaint. Surely it would not be fraudulent for the husband to do secretly before marriage that which he could do either openly or secretly after marriage. Could he by deed or will devest himself of all his property after marriage without the consent of his

wife, the law would not treat as fraudulent his disposition thereof before marriage, though done after engagement, and for the express purpose of preventing his prospective wife obtaining a share of his estate at the time of his death. The authorities are unanimous on this point. *Small* v. *Small*, (Kan. Sup.) 42 Pac. Rep. 323; *Padfield* v. *Padfield*, 78 Ill. 16; *Holmes* v. *Holmes*, 3 Paige, 363; *Dunnock* v. *Dunnock*, 3 Md. Ch. 140; *Cameron* v. *Cameron*, 10 Smedes & M. 394; *Lightfoot* v. *Colgin*, 5 Munf. 42; *Lines* v. *Lines*, 142 Pa. St. 149, 21 Atl. 809; *Pringle* v. *Pringle*, 59 Pa. St. 281; *Smith* v. *Hines*, 10 Fla. 258; *Richards* v. *Richards*, 11 Humph. 429; *Sanborn* v. *Goodhue*, 8 Fost. (N. H.) 48; *Ford* v. *Ford*, 4 Ala. 142, 146; *Williams* v. *Williams*, 40 Fed. Rep. 521; *Stone* v. *Stone*, 18 Mo. 390. Of course, the transfer must be actual, and not colorable. See *Rabbitt* v. *Gaither*, 67 Md. 94, 8 Atl. 744; *Smith* v. *Smith*, (Colo. Sup.) 46 Pac. Rep. 128. The only ground, therefore, on which we can sustain the plaintiff's charge of legal fraud, is that she would have secured by marriage such a contingent right to a homstead interest in the land in question, had it not been deeded away before marriage, that the law will deem the disappointment, through the act of her husband, of her just expectation that she should enjoy such right, as a wrongful act on his part, which it will set aside, as against those who are not innocent purchasers, to the extent necessary to protect her homestead interest. If the contingent interest were absolutely at the control of her husband, we would have no hesitation in saying that she could have no redress. Were it the law in this state that the husband, even after marriage, could devest the homestead right of the wife by transfer during his life, or by devise on his death, or by mere removal from the premises, we would be clear that the conveyance to the defendant was a perfectly legitimate transaction. The authorities are clear on this point. See cases last above cited. If, therefore, we decide against the legality of this deed in so far as it affects plaintiff's homestead interest, it must be on the ground that, although the husband can devest the wife's interest in the home-

stead by a bona fide change of residence, yet in the absence of such a change her homstead right is as much fixed by marriage as was the wife's right of dower at common law. So long as the premises continue to be the home of the parties, the husband is as powerless to affect his wife's right to hold them as a home after his death as he is powerless to cut off by deed or will her dower right in a state where dower still exists. Revised Codes, sections 3608, 3626.

We think that the fact the husband has a qualified right to defeat the wife's homestead interest does not take the case out of the category of rights which a court of equity will protect, as against a secret transfer before marriage to defeat the same. The husband may know in advance that it is his purpose to reside on that particular parcel of land for the remainder of his days. If this is his determination, it is obvious that he must know that after marriage he cannot defeat his wife's homestead right. With this thought, in mind, and conscious of the fact that therefore he must make an antenuptial transfer if he would prevent the homestead interest of his prospective wife from attaching beyond his power to control it, he secretly deeds away the land without valuable consideration. How can such an act be characterized, except as a fraud? What purpose could he have had, except the wrongful one to defeat his wife's just expectations by a secret device? From the standpoint occupied by him, the case is in no manner different from what it would have been had he possessed no power, even by change of residence, to defeat the wife's homestead rights. That it was in the mind of the grantor at the time he made this transfer that his home would remain upon this land until his death, is evidenced by the fact that, as an inducement to the plaintiff to marry him, he promised to erect thereon a substantial dwelling, in place of the old building in which he was living. This structure was in fact built, and he continued to reside therein with plaintiff up to the day of his death. Not only had he decided to make that his home, but the plaintiff was fully justified in the belief, which she doubtless entertained, that

this was to be their homestead, and that after his death she could continue to live there, under the law, as his widow. There was considerable disparity in their ages; he being 46, and she only 23, at the time of their engagement and marriage. She could not have failed to anticipate that in all probability she would survive him. She must have inferred, from his promise to build a new house, in which they were to dwell, on his homestead, that he was to continue the owner of the property, and thus give to her the homestead rights of a wife and widow. He must have known that she looked forward to the possibility of outliving him. He could not help realizing that she would infer from his promise to build a new dwelling that he would in good faith give her such a home there as the law would entitle her, as widow, to hold for life after his death. The fact that he kept from her all knowledge of this conveyance to his son, not only before marriage, but thereafter as well, is convincing proof that he well knew that she was counting on having this homestead, should she outlive him. He undoubtedly feared, and well might fear, that she would not marry him if she knew that at the end of their married life, herself perhaps a woman advanced in years, she might be turned out upon the world without a home. Considering the difference in their ages, we may well believe that it was not so much sentiment and affection, as a desire to secure for herself a home for life, that prompted her to become his wife; and he could not have failed to realize that such a motive, if not the sole, was yet the controlling, motive which influenced her course. The undisputed evidence in the case—evidence which comes from one of defendants' own witnesses (the evidence of a son of the grantor, who narrates a conversation with the father) shows that the very purpose of making this secret conveyance was to defraud the woman he was about to marry of her homestead right. The testimony referred to is as follows: "Q. Did you at any time hear your father make any statements with reference to his sister, Mrs. Ingebretson, and her marriage? A. Yes. Q. In that connection did you at any time hear your father

make any statements as to what provision he had made for his children prior to his marriage; and, if so, what statements, and when were they made? A. He referred to that affair very often, occasionally when he got to talking about the disposition of the estate; and he thought it was too bad that Mr. Ingebretson didn't know enough to dispose of some of his property before he married the second wife, because, under the law, she would own the homestead, etc.; and he expressed the opinion that it was very foolish for a person to do such things, and not fix up some things when they remarried the second time." We are not without express authority in support of our view that the case is not taken out of the rule by the fact that the right of the wife in the property would not have been entirely beyond the husband's control had the antenuptial conveyance not been made. In *Thayer* v. *Thayer*, 14 Vt. 107, it appeared that the wife's right of dower could be barred by the husband's transfer during life. At common law this, of course, was not the rule. But in that state a statute had introduced a change placing the wife's dower right at the mercy of the husband, provided he saw fit to convey the land during life. The deed was made to a child of the husband just before his death, but subsequently to the marriage. The court held that it was fraudulent and void as to the dower interest of the wife. At page 122 the court said: "The chancellor supposes that the wife and the children both stand upon the same ground, and that neither have any such rights, in the lifetime of the ancestor, as to be the subject of fraud. But there is a manifest difference. The ancestor may by will exclude entirely the children from all participation in his estate; not so the wife." To same effect are *Davis* v. *Davis*, 5 Mo. 183; *Smith* v. *Smith*, (Colo. Sup.) 46 Pac. Rep. 128; *Manikee* v. *Beard*, (Ky.) 2 S. W. Rep. 545. There is reasoning to be found in some of the cases, which, on a casual reading, appears to militate against the doctrine that a secret transfer is fraudulent. But, when these decisions are examined, it will be found that the law of the jurisdiction where the question arose gave the husband an unfettered

control over his property, conferring upon him the right to select the time and mode of the transfer thereof, free from all claims of his wife thereon; giving her no interest therein, save as successor or distributee in case of intestacy. The opinion of Judge Brewer in *Butler* v. *Butler*, 21 Kan. 251, proceeds on the basis of such a state of the law. Mr. Pomeroy has in mind such a condition of the law when he declares that, in view of the state of the law in some sections of this country, the old doctrine of equity jurisprudence is there obselete. See 2 Pom. Eq. Jur. § 920, and 3 Pom. Eq. Jur. § 1113.

We now come to another branch of the question under consideration. It is urged that the transfer is valid because it is no more than a reasonable provision in favor of the husband's own child by a former marriage, and that at the time it was made the husband retained the title to 320 acres of land, and was the owner of personal property of the value of about $40,000. At the time of his death this personal estate was inventoried at something over $48,000. As he left no will, the widow will receive one-third of this property after paying expenses of administration. But we are not to judge of the legality of this transaction by the sequel. If originally fraudulent, it cannot be validated by the fact that her husband has failed to bequeath away from her, or give away in his lifetime, his personal property. He might have done so, and, in determining whether the deed in question was valid, we must take this fact into consideration. The only ground, therefore, on which counsel for defendants can sustain the conveyance, is that it was a reasonable provision for his son, the grantee, and that a secret transfer can be made, even when it seriously affects the wife, provided the object of the husband's bounty is a child, and the gift is not extravagant, considering his estate. The husband had living, at the time he conveyed the land in question to the defendant, nine children by his former wife. Some of these were of age, and some were not. He deeded four farms of land, aggregating 550 acres, to those of his children who had attained their majority; one of these conveyances being

that which is here assailed. It is established that his object was that all his children should share in this property conveyed; he trusting to the honor of the grantees to see that their younger brothers and sisters received fair treatment. In view of the number of children, and the large amount of real and personal property which he still retained, we cannot say that the provisions which he made for his offspring by his former marriage was unreasonable. But it is not enough to take the sting out of a secret transfer on the eve of marriage that it was for the benefit of worthy objects of the husband's bounty, when the effect of such transfer is seriously to prejudice the rights of the prospective wife. Can the husband, who owns real and personal property, secretly deed all the land to his children, and then claim that the transaction was not a fraud upon the wife's right of dower, because the property conveyed constituted only a reasonable provision for his own progeny? In discharging his duty to his children, he must not be recreant to his equally binding duty to his future bride. He should select property in which she will have no right, and not take the only property in which the law gives her any interest. He cannot deed away the homestead, and then shelter himself under the plea that he has honestly performed a duty to his own blood. If he wishes to give his child the homestad, then he must apprise his prospective wife of the fact, and let her decide whether, under such circumstances, she desires to marry him or not. In *England* v. *Downs*, 2 Beav. 522, Lord Langdale said: "In the execution of this settlement, so far as it made provision for her children, she was performing a moral duty. In the circumstances in which she was placed, it was clearly her duty, before she placed herself and her property in the power of her second husband, to secure a provision for her children by her first husband, from whom her property was derived. But, in performing a duty towards her children, she had no right to act fraudulently towards her second husband." And again he says: "It is not doubted that proof of direct misrepresentations or of willful concealment, with intent to deceive

the husband, would entitle him to relief; but it is said that mere concealment is not in such a case any evidence of fraud, and that if a man, without making any inquiry as to a woman's affairs and property, thinks fit to marry her, he must take her and her property as he finds them, and has no right to complain if, in the absence of any care on his part, she has taken care of herself and her children without his knowledge. This proposition, however, cannot be admitted as stated; and clearly a woman, in such circumstances, can only reconcile all her moral duties by making a proper settlement on herself and her children with the knowledge of her intended husband." In *Williams* v. *Carle*, 10 N. J. Eq. 543, the court said: "The counsel of the defendants further insisted that, the disposition which is alleged to have been made of the property being for the benefit of the children of the proposed marriage, the trust was a meritorious one, and such as a court of equity will not disturb. The cases of *Hunt* v. *Matthews*, 1 Vern. 408, and of *Rex* v. *Cotton*, 2 P. Wms. 674, were cited as sustaining the rule that a settlement by a widow upon her children by a former marriage, even if made during the treaty for a second marriage, without the consent or knowledge of her intended husband, is valid. It was argued that a settlement for the benefit of children of the contemplated marriage is equally meritorious. But I cannot understand upon what just principle a trust in either case can be declared valid by a court of equity. In *Hunt* v. *Matthews* the court is reported to have said, or rather thought,—for that is the word used,—that a widow might, with a good conscience, before she put herself under the power of a second husband, provide for the children she had by the first. Now, there may be no difference of opinion as to the propriety of her making such a provision for her children, and in some cases she would be conscientiously and morally bound to do so; but the question remains, could she conscientiously do it without the knowledge of her husband? Could she contract with him upon the assumption that upon its execution the property was to be his, and yet clandestinely place the property beyond his control?

The settlement, though a meritorious one, would not be less a fraud upon the husband, and the court interferes with it because it is done in a manner which makes it a fraud upon his marital rights." We do not mean to say that under no circumstances could the husband or wife make a secret conveyance which would be valid. The question has always been whether the transfer was reasonable in view of all the surrounding facts. When the husband was by the marriage rendered liable for his wife's debts, there was much force in the rule which precluded the wife from making any secret antenuptial disposition of property, although her children by a former marriage were the objects of her bounty. His rights might well be deemed superior to theirs because he was, in effect, a purchaser of all her estate for a valuable consideration; *i. e.* the liability he incurred for her debts. But the wife's claim to dower stood upon a somewhat different footing. And the decisions are quite numerous that she cannot complain where, in good faith, only a reasonable provision is made for children, although she is ignorant of the transaction, and the effect of it is to decrease the value of the dower right she secures by the marriage. *Murray* v. *Murray*, (Ky.) 13 S. W. Rep. 244; *Dudley* v. *Dudley*, (Wis.) 45 N. W. Rep. 602; *Goodman* v. *Malcom*, (Kan. App.) 48 Pac. Rep. 439; *Hamilton* v. *Smith*, (Iowa,) 10 N. W. Rep. 276; *Alkire* v. *Alkire*, (Ind. Sup.) 32 N. E. Rep. 571. See, also, *Butler* v. *Butler*, 21 Kan. 521; *Tucker* v. *Andrews*, 13 Me. 124, 128; 2 Kent, Comm. 175; Story, Eq. Jur. § 273; *Gregory* v. *Winston's Adm'r*, 23 Grat. 102, 123; *Chandler* v. *Hollingsworth*, 3 Del. Ch. 99, 110, 113.

But these decisions are not opposed to our ruling in this case. They all recognize the principle that the effect of the transaction must not be utterly to keep from the wife all the interest in his property which would after marriage be beyond her husband's absolute control. To give his children a portion of his real property, leaving other real estate still standing in his name, is widely different from the transfer of all his lands to them thus precluding the possibility of any dower right vesting in the wife. In the

case before us the secret conveyance related to the only property in which the wife could expect to secure by her marriage any interest beyond the full control of her husband after marriage. If such a transaction can be sustained on the ground that a reasonable provision was thereby made for children, it is obvious that nothing is left in this jurisdiction of the rule so widely recognized, and founded in sound policy as well as upon principle of natural justice. Of course, the husband, acting in good faith, can, after marriage, destroy his wife's interest in the homestead, by changing his place of residence. She is bound to know that her expectation that he will not do so may be disappointed. But she certainly is justified in assuming that, if he does not in this manner devest her of her homestead interest in the land, she shall not be surprised at his death by a secret antenuptial conveyance of the homestead, made to defeat her rights. The very fact that the homestead right is less secure than that of dower at common law is of itself a strong reason why the courts should be even more watchful to protect it against destruction by the secret devices of one who is bound in morals to divulge to his betrothed any transaction which will effect her rights as his wife. We hold that the deed in question was fraudulent and void, as to plaintiff, both because the transaction was fraudulent in law, and because the purpose of the husband was secretly to deprive her of her homestead right. The conveyance will not, however, be set aside, except as to her homestead interest, unless we find that it was never in fact delivered by the grantor. That the deed is not entirely void as to the wife is too clear to admit of doubt. See *Chandler* v. *Hollingsworth*, 3 Del. Ch. 99; *Dudley* v. *Dudley*, 76 Wis. 567, 45 N. W. Rep. 602. In none of the cases has she been protected, except as to the right which after marriage the husband could not fully control. The husband of the plaintiff had a perfect right to prevent her succeeding to any of his real property as heir, and, in so far as the deed to the son defeats her claim upon this land as heir, it must stand, unless we find that the deed was never in fact delivered.

This brings us to the second branch of the case. The deed was not delivered by the grantor to the defendant, but was handed to a third person, on the condition that it was not to be delivered to the grantee until the grantor's death. If, however, there was in fact a delivery of the deed to such third person, it is immaterial that the ultimate delivery to the grantee was not to take place until the death of the grantor. However open to criticism from the standpoint of legal principles the doctrine may be, it is now a thoroughly established rule that, if the grantor parts with all control over the deed at the time of its delivery to the third person, the delivery is good, and the title passes to the grantee. although the delivery to him is not to take place until after the grantor's death. The transaction does not vest in the grantee a fee in possession, but only a fee in remainder after the life estate of the grantor which by implication is carved out of the fee, has terminated. Some of the cases proceed on the theory that the fee does not pass to the grantee until the delivery of the deed to him, and that then his title relates back to the original delivery. But the better rule is that the deed is immediately operative as against the grantor, and that the condition that the delivery to the grantee shall not be made until after the grantor's death is equivalent to the reservation of a life estate in his favor in the land itself. The distinction, however, is not important for the purposes of this case. The grantor has died, and the deed has been delivered. The cases holding that a deed delivered to take effect on the death of the grantor is valid, are collected by Mr. Jones in his work on real property. See volume 2, section 1234, and cases cited. To same effect are *Burry* v. *Young*, (Cal.) 33 Pac. Rep. 338; *Wittenbrock* v. *Cass*, (Cal.) 42 Pac. Rep. 300; *Baker* v. *Baker*, (Ill.) 42 N. E. Rep. 867: *Brown* v. *Westerfield*, (Neb.) 66 N. W. Rep. 439; *Denzler* v. *Rieckhoff*, (Iowa,) 66 N. W. Rep. 147; *Haeg* v. *Haeg*, 53 Minn. 33, 55 N. W. Rep. 1114. There are authorities which uphold such transfers even though the grantor reserves a right to recall the deed at any time before his death, provided he does

not do so. But we regard these adjudications as indefensible on principle. Such a transaction is nothing more than a testamentary disposition of property. Unless, therefore, we are able to discover from this record that the grantor absolutely parted with all control over the deed, and intended it to operate as a present conveyance, subject to his life interest, we must adjudge the instrument void for want of delivery. See 2 Jones, Real Prop. section 1236. The learned District Judge found in favor of an actual delivery, and as he had before him the witnesses on whose testimony his finding is based, we will not disturb it unless it appears to be clearly erroneous. The deed was delivered to a Mr. Hyde. His evidence relating to the delivery is as follows: "I was formerly cashier of the Hillsboro Banking Company, of Hillsboro. I severed my connection with the Hillsboro Banking Company, and went to Fargo, in January, 1896. While cashier of the Hillsboro Banking Company, I was acquainted with Ole Arnegaard, deceased. I had known him since 1881. Exhibit A is in my handwriting. I remember the occasion of drawing that deed. It was drawn, at the request of Ole O. Arnegaard, at the date it appears to be dated at the top. It was afterwards signed and acknowledged in my presence by Mr. Arnegaard, before me as notary public, on the day that the acknowledgement appears dated. The instrument was prepared prior to the actual acknowledgment of it. Q. On the day that you prepared this deed for Mr. Arnegaard, will you state what his instructions were to you, or what conversation was between you with reference to it? A. We had considerable talk about this matter before I prepared the paper for him. Mr. Arnegaard came into the bank, and asked me if I would draw up some deeds for him, and I told him I would. I had been in the habit of making papers for him from time to time as he needed them, and he said that he wanted to deed this property that is mentioned in this deed to his son, and gave me the description, which I noted down on paper. The matter of consideration came up, and I advised Mr. Arnegaard to insert in the deed one dollar and other

valuable consideration. He told me that he preferred to have the consideration written as it appears in the deed. He said that he desired the boys to have this property, and he wished to deed it to them. In the conversation, I asked him why he didn't make a will; and he told me he didn't know anything about wills, but he did know something about deeds and mortgages, and he preferred to have it deeded. I prepared this instrument, and, I think, two others; and they were signed by him as shown. He delivered them over to me, requesting me to take these instruments, and hold them, and, in case of his death, to put them on record, and requested me to say nothing to any parties about his having deeded this property." When Mr. Hyde removed from Hillsboro to the City of Fargo, he failed to take with him these deeds. They were left in the bank vault at Hillsboro. It appears that thereafter the grantor called at the bank for some papers. Whether he asked for these deeds, including the deed to the defendant, or for some other papers belonging to him, is not settled by the evidence. The only witness who can testify to this fact is in doubt about it. But it is undisputed that, along with other papers of his, these deeds were handed to him, and that he kept them in his possession until his death. We do not attach much importance to this fact, considering the circumstances. Indeed, if the deeds were once delivered to Hyde for the benefit of the grantees, it was beyond the power of the grantor to devest the title of the grantees by regaining possession thereof, or even by destruction of the same. A delivery passes title, and such title is thereafter as much beyond the control of the grantor as though he had never owned the land. *Conrad* v. *Colgan*, 55 Iowa, 538, 8 N. W. Rep. 351; *Siebel* v. *Rapp*, 85 Va. 28, 6 S. E. Rep. 478; *Douglas* v. *West*, 140 Ill. 455, 31 N. E. Rep. 403. For this reason it has been held that the declarations of the grantor subsequent to an alleged delivery are not competent to impeach it. If he has in fact transferred the title, he cannot, by his unsworn declarations made in his own interest, in effect lay

the foundation for securing a restoration of the title without the act or even consent of the grantee. See *Bury* v. *Young*, (Cal.) 33 Pac. Rep. 338; *Blight* v. *Schenck*, 51 Am. Dec. 481; *Squires* v. *Summers*, 85 Ind. 252; *Souverbye* v. *Arden*, 1 Johns. Ch. 240. Without setting forth in detail all the evidence, we find much in the case to confirm the theory that the grantor intended to part with all control over the deed. We think that the motive which prompted the execution of these conveyances is strong evidence that he intended to devest himself of the title at once. It is apparent that his object was to prevent the interest of his second wife attaching to the land. He was, of course, wrong in supposing that any other than a homestead interest would vest in her on their marriage; but, in determining what he thought, we must treat him as a layman, and not as a skilled lawyer. He evidently believed that, if he owned this land when the second marriage took place, the plaintiff could obtain some control over his future disposition of the property. Such being his thought, and it being apparent that he wished to preclude the possibility of such control, we are impelled to the conclusion that he meant that the deed should immediately transfer his title, subject only to the condition that the enjoyment of the possession was to be postponed. We must not lose sight of the fact that the conveyance was to his own children; and courts have gone very far in sustaining such transactions,—sometimes apparently holding that in such cases no delivery is necessary. *Souverbye* v. *Arden*, 1 Johns, Ch. 240; *Wallace* v. *Berdell*, 97 N. Y. 13; 2 Jones, Real Prop. § 1277; *Scrughan* v. *Wood*, 15 Wend. 545. That the declarations of the grantor himself, though subsequent to the alleged delivery, are competent evidence of intent, in support of the deed, is well settled. Such declarations are against the interest of the only party who is interested in defeating the deed at the time they are made. The defendant was sworn as a witness in the case, and testified as follows with reference to a conversation had with his father: "He spoke to me several times. One time he spoke to me about the deeds. He told me

that he had deeded the east quarter (what they usually called it) to Martin, and that he wished me to tell Martin that he expected him to come home soon and take that quarter, and he would move the school house over there and fix it up, and he could farm it. That is the only time he used the word 'deed.' He several times spoke to me about disposing of the land, and he always used the word 'papers.'" It is true that this evidence does not relate to the deed in question, but all these deeds were executed and delivered at the same time, and, if the grantor intended to deliver any of them, he intended to deliver them all. There was only a single transaction with reference to them. There is evidence equally strong but the great length of this opinion forbids a more specific reference to it.

The question of acceptance remains. Acceptance by the grantee is an essential part of a delivery. But it is well settled that the grantee may, in case of delivery to a stranger, on subsequently learning of such delivery accept the conveyance, and such acceptance relates back to the time of such delivery. "If a deed be delivered absolutely, and beyond the grantor's control and right of dominion, for the grantee's use, to a person not at the time authorized by him to receive it, and the grantee afterwards accepts it, or authorizes the custodian to accept it, the deed is effectual from the time it was placed in the hands of such person." 2 Jones, Real Prop. section 1241. Our statute embodies this rule. Rev. Codes, section 3520. The acceptance by the grantee has been shown. But it was not necessary to prove such acceptance, the grant being beneficial to the grantee; *i. e.* an unconditional gift to him. The law presumes an acceptance. "The fact that a conveyance is beneficial to the grantee, and imposes no burdens on him is in numerous cases the ground for asserting the general proposition that an acceptance of such a deed may always be inferred. The rule is stated to be that, if a deed is delivered to a third person for the grantee, neither the presence of the grantee, nor his previous authority, nor his subsequent express assent, is necessary to make the delivery valid.

If the deed is beneficial to the grantee, his assent will be presumed, in the absence of proof of his dissent." 2 Jones, Real Prop. section 1282. It is true that there appears to be a division of authority on the point, but our statute clearly recognizes the doctrine we have stated. A delivery is declared to be good when made to a stranger, not only on showing the assent of the grantee, but also when his assent may be presumed. Rev. Codes, section 3520. There is evidence in the case from which an acceptance by the grantee during the life of the grantor may be inferred. He appears to have known of the deed, and did not refuse to accept its highly beneficial provisions.

The case of *Hibbard* v. *Smith*, (Cal.) 4 Pac. Rep. 473, is not in point; for here no rights of third persons intervened between the delivery and acceptance, as in that case. The court there expressly recognized the principle of relation as between the parties, saying: "As between grantor and grantee, or those claiming under them, when the right of a third person is not involved, it may be rightly held that an acceptance or assent by the grantee to a deed delivered to a stranger for the use of the grantee, made after such tradition to a stranger, constitutes a full and complete delivery. It may be so held under the doctrine of relation. The subsequent assent or acceptance relates back to the time of such delivery to the stranger, and makes such acts contemporaneous; *i. e.* makes such tradition to a stranger, and the subsequent assent, contemporaneous." From a careful examination of the record, we are thoroughly satisfied that there was a delivery of the deed by the grantor; and such deed must therefore stand, except in so far as it affects plaintiff's homestead right. Had the purposes of the grantor been to leave these deeds with Hyde, to take effect only on his death, the grantor reserving to himself control thereover, they would have been testamentary in character, and therefore void as deeds, for want of delivery during the grantor's life. Every fact in the case indicates that this was not his purpose. He delivered them without reserving any control thereover. He expressly refused

to make the disposition by will, though this was suggested to him by Hyde. His purpose was to devest himself of ownership before the marriage which was soon to take place, that his second wife should not acquire any interest in the land. He repeatedly said that he had deeded the land to the boys. To sustain them is to give effect to them as deeds. To refuse to sustain them is to construe them as wills, in the face of the fact that they do not purport to be testamentary in character. And, finally, to uphold them is to do that which courts have gone to great lengths to accomplish, namely, sustain a provision made by the parent in his lifetime for his children.

We have hitherto refrained from referring to a point made by counsel for defendants. In view of the disposition made of the case, we might perhaps, ignore it; but we have decided to pass upon it, as it goes to our right to investigate at all the question of delivery. Counsel for defendants contends that all the questions here raised were settled adversely to the widow by the order of the county court of Traill County, which on appeal to the District Court was affirmed. Such prior adjudication is set up in the answer, and there is evidence in the case supporting such alleged defense. It appears that in a proceeding instituted by the widow in the county court having jurisdiction of the estate of Ole O. Arnegaard, to compel the administrator to place upon the inventory the real estate here involved, the judgment of such court was that the land did not belong to the estate of Ole O. Arnegaard; and on appeal to the District Court this judgment was affirmed. But we are clear that such adjudication can have no effect upon the question of title of one claiming in hostility to the estate. The county court has no power to try the question of title, as between the representative and persons claiming adversely to the estate. If the decedent has in fact conveyed his land before his death, that court cannot, by any order or judgment it may make, settle one way or the other the question whether the decedent owned the land at the time of his death. The fact that the grantee in such a conveyance may happen to

be a person interested in the estate does not alter the rule. As to such property, he is in the same position as an entire stranger. The court in which the estates of deceased persons are administered has no jurisdiction of a proceeding to determine whether the decedent has or has not transferred the property to another. Such a controversy must be settled in the District Court, and it can make no difference that the question is fully contested in the county court, for the parties cannot by consent confer jurisdiction over the subject matter. Had the decision in the county court relied on by counsel for defendants been in favor of the widow, she could not have availed herself of it in this action, because that court had no power to determine whether the grantees in these deeds were or were not the owners of this land. And for the same reason an adverse decision can work her no prejudice. As the county court had no power to try the question of title, it follows that, the District Court, on appeal from the order of the county court, had no such power. The questions here discussed are all treated in *Stewart* v. *Lohr*, 1 Wash. St. 341, 25 Pac. Rep. 457, which is an express authority in support of our ruling on this branch of the case. The county court may undoubtedly determine in a tentative way what property should be placed on the inventory as the property of the decedent. But any decision made by it would be controlled by the final result of an action brought in a proper court to try the question of title. Should the administrator be ordered to place certain lands upon his inventory, and should it subsequenty be decided, in a proper action, that the property in fact belonged to another, the administrator would not be chargeable therewith. The object of the proceeding to compel an administrator to place particular property upon the inventory is not to settle any question of title, as between those interested in the estate and persons who claim in hostility thereto. Nor has the county court any jurisdiction to adjudicate upon such title. We therefore hold that the judgment set forth in the answer does not constitute a former adjudication of the question of the title of this defendant to the land in controversy, or of the

widow's right to a homestead. The judgment will be modified by the District Court in accordance with the views herein expressed, the appellant recovering costs in both courts. All concur.