[File No. 7311]

JOHN L. JOHNSON; Herbert Speigel, Herbert Phillips and Esther Phillips substituted as parties plaintiff for and instead of Mrs. Herbert Speigel also known as Mrs. Herbert S. Speigel and as Myrtle E. Speigel formerly Myrtle E. Campbell; Mrs. J. L. Kelley also known as Mary L. Kelley; Mrs. Harold Mott also known as Alice V. Mott formerly Alice Johnson and Alice V. Johnson; Wesley Dawe and Ernestine Dawe, also written Westley Darve and Ernestine Darve, respectively, as heirs and successors in interest of Mattie E. Dawe, Appellants, v. ESTHER J. WELDY, W. E. Weldy and W. C. Johnson also known as William C. Johnson, Respondents.

(54 NW2d 829)

Opinion filed August 13, 1952.   Rehearing denied September 4, 1952.

*Hyland & Foster,* for appellants.

82

*Ingomar M. Oseth,* for respondent.

MORRIS, Ch. J. The defendant, Esther J. Weldy, is the record title owner of lots 9, 10, 11, and 12 in Block 86 of the Original Plat of the City of Bismarck. This is an action to quiet title in the plaintiffs to five-sevenths interest in this property, it being conceded that the defendant, Esther J. Weldy, owns a two-sevenths interest therein jointly with the plaintiffs.

In January 1933, and for some years prior thereto, the property was owned and occupied by Linda Johnson, a widow.

The contending parties are her descendants, being either children or grandchildren. The defendant, W. E. Weldy, husband of Esther J. Weldy, claims no interest in the property. The defendant, W. C. Johnson, denies that he claims any interest and alleges that such interest as he might have in the property has been conveyed to Esther J. Weldy. On January 23, 1933, Linda Johnson executed a deed to the premises in question to Mary L. Kelley for "One dollar and other good and valuable considerations." The deed bears revenue stamps in the amount of four dollars. It was recorded in the office of the Register of Deeds of Burleigh County on December 29, 1934. This deed was acknowledged on the date that it bears before A. H. Helgeson, notary public.

On April 12, 1933, Linda Johnson executed before the same notary public an instrument in writing, the material portions of which are as follows:

## "T R U S T

"I, Linda Johnson, also known as Mrs. Chris Johnson, of the City of Bismarck, County of Burleigh, and State of North Dakota, do hereby, and by these presents, in consideration of the Love and Affection of my loving sons and daughters, namely: Mary L. Kelley, Esther J. Weldy, William C. Johnson, John L. Johnson, Alice V. Johnson, Mattie E. Dawe and Myrtle E. Campbell, create and set aside in trust in the event of my demise, all my real property hereinafter mentioned:

"The conditions of this Trust is Such:

"1. Reposing especial trust and confidence in the ability and integrity of my loving daughter Mary L. Kelley, I do hereby, and by these presents appoint her, my daughter, Mary L. Kelley, the Trustee, in the event of my demise, to administer the trust hereinafter reposed in her, and to receive from me a certain deed of warranty covering lots 9 (nine), 10 (ten), 11 (eleven), and 12 (twelve), in Block 86 (eighty-six) of the Original Plat of the City of Bismarck, Burleigh County, North Dakota, to be and to become operative and to be filed for record in the office of the Register of Deeds, in and for Burleigh County, North Dakota, in the event of my demise; and

"2. Said Trustee shall when this trust becomes operative in the event of my demise, file for record said deed hereinbefore described, and which she shall hold in escrow until my demise, and shall proceed to collect all rents than owing me if any, and to regulate, lease and let to such parties as she may in her judgment determine to be fit and suitable tenants, and collect rents, pay taxes that may become due from time to time in the course of her administration of this trust, and to pay such fire insurance as is necessary to protect the interest of the hereinafter mentioned beneficiaries, and from the proceeds of such rental, after first preserving the assets of the said trust, she shall pay any and all just debts due others by me, if any, and the residue after first preserving the assets, she divide equally, and disburse twice each year, or as many times each year as she may deem necessary, amongst the seven beneficiaries above named, as follows: Mary L. Kelley, Esther J. Weldy, William C. Johnson, John L. Johnson, Alice V. Johnson, Mattie E. Dawe and Myrtle E. Campbell, equally and share and share alike; and

"3. Should any one of the beneficiaries named herein be taken in death, then shall the children then living of the said deceased beneficiary receive the share so accruing to such deceased beneficiary, if living, and such children which would be my grandchildren shall then receive share and share alike of such share which if living would have accrued to any one of sons and daughters, if living; and

"4. Should any one of the beneficiaries named herein be taken in death, and have no living children at the time of their demise, then shall the share in this trust revert to and divided equally amongst the remaining living beneficiaries herein named, including any and all of my grandchildren who have by the death of their father or mother, who are beneficiaries of this trust, receive such share; and

"5. The property hereinbefore described shall continue in the name of Mary L. Kelley, my daughter, until such time as the trust has been fully administered, and closed, or until such time, as the beneficiaries hereto and herein named shall have consented to the sale and transfer of the said property, and

the proceeds therefore shall have been fully disbursed and expended, and which consent to such sale of the premises herein, by the beneficiaries herein named, shall and must be in writing authorizing the trustee herein named to transfer said property in fee simple to whomsoever may become the purchaser or owner; and said trustee shall have the right and the power to sue and to be sued in her own name in the conduct and administration of this trust until its conclusion; and

"6. The trustee herein named, namely Mary L. Kelley, shall have the right to, and the power to transfer, in the event of her demise, to Esther J. Weldy, one other of my loving daughters, the administration of this trust, for her to administer the residue of the said trust then that may be remaining, and such other things that is herein reposed in this trustee herein appointed; and

"7. A copy of this trust shall be delivered to each one of my sons and daughters that are living when and if in the event of my demise, and this the original copy of the trust shall be and remain with the Trustee administering the trust, and

"8. It shall be and it is my request that my sons and my daughters whom I have reared with loving care and tolerance, be as tolerant with each other, in the event of my demise, as I have tried to be with them, both for the good of their own hearts and soul, and for the peaceful, honest and successful administration of this Trust consisting of all my earthly possessions.

"I, Linda Johnson, do hereby deliver in escrow abiding the vent of my demise, the deed for the property herein described to Mary L. Kelley, my daughter and the designated trustee to fulfill the commands herein set forth.

"In witness whereof, I have this 12th day of April, 1933 set my hand and signed my name;

Linda Johnson"

Attached to and a part of this instrument is the following:

"Acceptance of the Said Trust And Deed.

"I, Mary L. Kelley, do hereby as evidenced by my signature hereto acknowledge the receipt of the deed in said trust mentioned, to be held by me in escrow until the operation of the

said trust as set forth, and I do accept said trust to be administered in my own name, for the purposes therein set forth;

"Dated this 12th day of April, 1933

Mary L. Kelley
Trustee"

The deed which had been given to Mary L. Kelley on January 23, 1933, was by her caused to be recorded on December 29, 1934, without the knowledge or consent of Linda Johnson.

On March 11, 1935, Mary L. Kelley and her husband, upon the request of Linda Johnson, executed and delivered to her their warranty deed for the premises expressing the same consideration and bearing the same amount of revenue stamps as did the warranty deed which had granted the premises to Mary L. Kelley. This deed was placed of record in the office of the Register of Deeds of Burleigh County, September 6, 1935. On the same day, Linda Johnson executed and delivered a warranty deed to Esther J. Weldy, which was recorded in the office of the register of deeds on the following day. It too, recites that it was given for "one dollar and other good and valuable considerations" and bears revenue stamps in the sum of $4.00.

Linda Johnson died on February 24, 1940, and throughout all of the time covered by the transactions herein discussed and up until the time of her death, remained in possession of the premises. After the execution of the deed to Esther J. Weldy, she resided with her mother and after her mother's death remained in possession of the premises. Mrs. Weldy had no knowledge of the existence of the instrument designated as a "Trust" until after her mother's death, when Mary L. Kelly mailed copies to the beneficiaries named therein.

The plaintiffs' primary contention is that the warranty deed to Mary L. Kelley, dated January 23, 1933, and the "Trust" executed by Linda Johnson and accepted by Mary L. Kelley on April 12, 1933, constituted parts of one and the same transactions; and that a trust was thereby expressly created with Mary L. Kelley as trustee and the seven sons and daughters of Linda Johnson as beneficiaries, which trust was irrevocable; and that Mary L. Kelley had no authority to deed the subject of

the trust back to Linda Johnson, as she attempted to do on March 11, 1935; and that her deed executed on that date, being given without the consent of the beneficiaries of the trust, is a nullity; and that the trust still exists; and that the beneficiaries named in the original instrument, or their successors, have an interest in the property to the extent provided therein.

The defendant, Esther J. Weldy, contends that the warranty deed executed by her mother on January 23, 1933, being absolute in form, conveyed a complete fee simple title to Mary L. Kelley; and that when the grantee in that deed again executed a similar instrument to Linda Johnson, it reconveyed a fee simple title to the original owner. As to the so-called "Trust," the defendant Weldy contends that it was testamentary in character and under the laws of this state did not create a trust; and that no interest in or charge upon the property was thereby created. The defendant Weldy further contends that she had no knowledge of any attempted trust; and that by the deed from her mother on September 6, 1935, she became an innocent purchaser of the premises for value.

The trial court determined that the instrument entitled "Trust" was testamentary in intent, character, and purpose and was ineffective to create an irrevocable trust with respect to the beneficiaries. He also found that the deed from Linda Johnson to the defendant, Esther J. Weldy, was a valid conveyance for an adequate consideration without notice to the grantee of any claims on the part of other parties to the action, invested in the grantee a fee simple title free of any claims of the plaintiffs or other parties. From a judgment quieting title in the defendant, Esther J. Weldy, the plaintiffs appeal.

To support their contention that the deed to Mary L. Kelley and the subsequently executed instrument purporting to appoint her trustee of the property so deeded were parts of the same transaction, the plaintiffs rely heavily upon the testimony of A. H. Helgeson, which was taken by deposition on January 17, 1951, in Douglas County, Oregon. Upon direct interrogation, the witness stated:

"During the month of January, 1933, I was requested to prepare a warranty deed for Linda Johnson. She stated she wanted

to deed her property in Bismarck to her daughter, Mary L. Kelley, subject to a Trust declaration which we discussed at that time, which would direct the distribution of her property described in the deed. The deed was prepared by me and on the 23rd day of January, 1933, Linda Johnson accompanied by Mary L. Kelley, came to my office in the Court House to sign the deed. I read the contents of the deed to Linda Johnson, in the presence of Mary L. Kelley, whereupon Linda Johnson signed the deed in my presence and in the presence of Mary L. Kelley I notarized the deed, and handed it back to Linda Johnson who then and there delivered the deed to Mary L. Kelley."

By cross interrogatory the witness was asked:

"Did Linda Johnson, at the time of the execution of the deed, or at the time she asked you to prepare it, make any mention of any intention that it should be a trust deed?"

To which the witness replied:

"Yes. The deed was given subject to a Trust Declaration that was discussed at that time, which was to be prepared by me."

Helgeson testified that he subsequently prepared the instrument entitled "Trust," and concerning its execution, he says:

"I took the completed Trust Declaration to the home of Linda Johnson at which time I left the completed Trust Declaration with her unsigned, that she, Linda Johnson, might study the contents of the Trust Declaration and familiarize herself with the directives and conditions in the Trust Declaration. On April 12, 1933, Linda Johnson, accompanied by her daughter, Mary L. Kelley, came to my office in the Sheriff's Office in Bismarck, where Linda Johnson stated that the Trust Declaration was just what she wanted and was ready to sign it. After reading the Trust Declaration to her, she signed the Trust Declaration at that time, whereupon I notarized her signature and at the same time, thereafter, in the presence of Linda Johnson and myself, Mary L. Kelley accepted the Trust Declaration. Linda Johnson then and there delivered the Trust Declaration to Mary L. Kelley, and it was placed in an envelope with the deed mentioned in the Trust Declaration which Deed was un-

recorded at that time, both to be held in escrow until such time as the Trust Declaration would become operative." .

At the time of his participation in these transactions the witness Helgeson was a deputy sheriff serving under Sheriff J. L. Kelley, who was the husband of Mary L. Kelley, the grantee and trustee of the transaction. He was not then nor had he been generally engaged in the practice of the law, although he was a member of the bar. .

The plaintiffs quote extensively from Reel v. Hansboro State Bank, 52 ND 182, 201 NW 861, in the syllabus of which we state:

"Whether a trust has been created is primarily 'a question of intention."

and

"A completed trust, without reservation of power of revocation, can only be revoked by consent of all the cestuis; * * *."

We are inclined to adopt the plaintiffs' theory that while the transaction consisted of two parts—the execution and delivery of the warranty deed by Linda Johnson on January 23, 1933, and the execution of the so-called trust and its acceptance by the trustee on April 12, 1933—it, in fact, constituted a single act and the instruments should be given the same effect as though executed simultaneously. No power of revocation is reserved and, if a trust was in fact completed, the deed which Mary L. Kelley subsequently gave to her mother without the knowledge or consent of the beneficiaries did not revoke or extinguish the trust. Thus we come to the prime and determining question of whether a trust was in fact created.

· If a trust exists in this case it relates to real property. It is an express trust and must be created or declared by a written instrument subscribed by the trustee or the trustee's agent thereto authorized in writing. An express trust in real property cannot be created by parol. Section 59–0303 NDRC 1943. The writing by which it is created is generally known as a declaration of trust and all previous declarations of the trustor are merged therein. Section 59–0204 NDRC 1943. The declaration of trust, if any there be in this case, is the instrument executed by Linda Johnson on April 12, 1933. By its terms we determine whether it was the intention of Linda Johnson to create

a trust, as the plaintiffs contend, or whether it was her intention to make a testamentary disposition of her property which would become effective only at her death, as contended by the defendant. This instrument cannot be valid as a testamentary disposition for it is not executed in the manner required by our statute prescribing the manner in which wills other than olographic and nuncupative wills must be executed and attested. Section 56–0302 NDRC 1943.

A testamentary disposition looks to the future and does not, as of the time of its execution, divest the testator of his property or any interest therein or vest a present property interest in the beneficiaries. On the other hand, an express trust makes a present and unequivocal disposition of the property of the trustor which divests him of the ownership thereof. 54 Am Jur, Trusts, Section 34; Perry on Trusts and Trustees, 7th Edition, page 119; Nichols v. Emery, 109 Cal 323, 41 Pac 1089, 50 Am St Rep 43; Cramer v. Hartford-Connecticut Trust Co., 110 Conn 22, 147 Atl 139, 73 ALR 201. A declaration is insufficient to create a trust that merely shows that the purported trustor intends to create a trust in the future. In re Wagoner's Estate, 174 Pa 558, 34 Atl 114, 32 LRA 766, 52 Am St Rep 828; Connecticut River Savings Bank v. Albee, 64 Vt 571, 25 Atl 487, 33 Am St Rep 944. But if the declaration purports to make a present conveyance of a future interest, the reservation of a life interest in the trustor does not indelibly stamp the declaration as testamentary in character. 54 Am Jur, Trusts, Section 22; Lowe v. Ruhlman, 67 Cal App2d 828, 155 P2d 671.

We now examine the purported trust declaration to determine whether it was the intention of Linda Johnson to create a trust, for without that intention on her part her words and acts cannot be said to create an express trust. Section 59–0104 NDRC 1943.

Although a manifestation of intention to create a trust is all that is needed for its creation, it must be a manifestation of intention to create a present trust and not merely to create a trust to arise at some future time." Scott on Trusts, Section 26.

Under the premise upon which we are proceeding, Linda John-

son had, as a part of the same transaction in which she signed the declaration, also executed a deed to Mary L. Kelley, absolute in form and without reservations. The language of the declaration, however, negatives the intention on the grantor's part to divest herself of title to her property at that time. The refrain "the event of my demise" is repeated seven times. She said that Mary L. Kelley was appointed trustee; the trust was to become operative and copies of the trust were to be delivered to the beneficiaries all "in event of my demise." With respect to the deed, she stated that it was

"to be and to become operative and to be filed for record in the office of the Register of Deeds, in and for Burleigh County, North Dakota, in event of my demise;   *   *   *.

"Said Trustee shall when this trust becomes operative in the event of my demise, file for record said deed hereinbefore described, and which she shall hold in escrow until my demise, *   *   *.

"I, Linda Johnson, do hereby deliver in escrow abiding the event of my demise, the deed for the property herein described to Mary L. Kelley,   *   *   *."

Thus Linda Johnson specifically provided not only that the deed should not become operative or be recorded until her death, but that until her death occurred the deed should be held "in escrow." Her use of that term indicates a lack of intention on her part to pass title prior to her death to Mary L. Kelley.

Section 47–0908 NDRC 1943 provides:

"A grant may be deposited by the grantor with a third person to be delivered on the performance of a condition, and on delivery by the depositary it will take effect. While in the possession of the third person and subject to condition, it is called an escrow."

It may be argued that under this statute a valid escrow can be created only by delivery to a third person and not to the grantee. However, the point now under consideration is the intention of the grantor. Her use of the word "escrow" in the declaration must be deemed consistent with her other commands that it should neither become operative nor be recorded until after her death. She intended that the deed should not be

operative until her death; and, by providing that the deed should be held "in escrow" abiding that event, she was attempting to make that intention effective.

We cannot dismiss the term "escrow" as meaningless merely on the ground that it was misused. Cross interrogatories were put to the witness Helgeson concerning his explanation to Linda Johnson and Mary L. Kelley at the time of the execution of the declaration, or at any other time, to which the witness replied:

"I may not have explained this just in your language, but they, Linda Johnson and Mary L. Kelley, understood that the two instruments were to be held in escrow until the Trust Declaration would become operative."

No inquiry was made of the witness as to what explanation he made, if any, as to the meaning of the term "escrow" as used in the declaration. Whether the delivery of the instruments to Mrs. Kelley was intended to be irrevocable does not appear from the testimony. In this respect the case is similar to Leonard v. Leonard, 145 Mich 563, 108 NW 985, from which we quote:

"The instrument in question was a statutory warranty deed, and contained the following clause:

" 'This deed is not to become operative until after the death of the parties of the first part hereto.'

"It was executed and acknowledged by both the husband and wife. It is admitted in the record that at the time it was made the title of the premises was in complainant, and the husband had no interest therein. The grantees paid no consideration and had no knowledge that the instrument was made until about four years afterwards, on the day when it was recorded. It was put into the hands of one Leonard Piggott, to be held by him until after the death of the parties executing it, when it was to be delivered to the grantees. * * *

"The character of this instrument depends upon the effect given to the sentence:

" 'This deed is not to be operative until after the death of the parties of the first part hereto.' .

"The words used cannot be said to apply simply to the enjoyment and possession of the property, but to the entire force

and effect of the instrument, and are repugnant to the creation of a present interest. This construction is in harmony with the conduct of the parties. There is no evidence of a delivery or an intention to deliver the instrument during the lifetime of the makers." See also Jones v. Loveless, 99 Ind 317.

In Arnegaard v. Arnegaard, 7 ND 475, 75 NW 797, 41 LRA 258, which involved a deed neither containing nor accompanied by any provisions regarding the time at which it should become operative, this court said in the syllabus:

"To make the delivery of a deed to a third person, to be delivered to the grantee on the death of the grantor, sufficient to transfer title, it must appear that he intended then and there to part with all control over the deed, and to leave it with the third person as the agent of the grantee;  *  *  *."

There are many cases and many divergent holdings with respect to deeds containing provisions postponing their effect or operation until after the grantor's death in which the court was confronted with the question of whether the instrument was in fact a deed or whether it was testamentary in character. See 16 Am Jur, Deeds, Section 199; Annotation in 11 ALR 67; 76 ALR 651. These authorities, dealing as they do for the most part with deeds that have been delivered directly to the grantee and intended to ultimately convey to the grantee a title absolute and not in trust, bear but obliquely upon the determining question in this case, which is the intention of Linda Johnson to create a trust which would immediately vest an interest in the beneficiaries. Nevertheless, they do generally deal with the question of the present passage of title and are authority for the proposition that the ultimate object of inquiry is the intent of the maker.

The plaintiffs have quoted at length from the case of Lewis v. Curnutt, 130 Iowa 423, 106 NW 914, wherein it appears that a grantor conveyed real estate to a trustee by warranty deed for the consideration of "one dollar and the execution of the trust hereby created." As a part of the same transaction, the grantor executed an instrument designating a trustee "for and in behalf of myself to receive, acquire, take, and hold title to.

the following real estate, * * * from and after my death, and not before, to execute, transfer, and convey perfect title to the above real estate, * * *." The court determined that

"Upon a fair construction of the writings as a whole, the words 'from and after my death' have no reference to the time when the title or interest shall pass under the deed, but to the time when the trustee shall have authority to take possession and proceed with the active performance of his trust. That this must be so is to be seen, not only from the language employed, but from the fact that then and there and as a part of the same transaction the grantor made and delivered to the trustee an unconditional conveyance of the title."

In that case the language by which it was sought to limit or modify the time when title or interest passed to the trustee under the deed was by the context at least equally applicable to the time when the trustee should proceed with the active performance of the trust. The court determined that the latter was the correct construction. In the case before us, we have not only the language with reference to the time when the deed should become operative but also when it should be filed of record, accompanied by the further provision that the deed was delivered in escrow "abiding the event of my demise." The grantee, by signing the acceptance of the trust, acknowledged the receipt of the deed "to be held by me in escrow until the operation of said trust as set forth, * * *." The limitation provided by the trust declaration in this case is far stronger than the one that appears in the case of Lewis v. Curnutt, supra, and indicates that it was not the intention of Linda Johnson to create a trust in the spring of 1933 by which an interest in her real estate would vest in any of the beneficiaries of the trust declaration, named or unnamed. This is not a case in which a trust is set up wherein the beneficiary acquires an interest during the lifetime of the trustor with enjoyment postponed until the trustor's death. See Section 56.5, Scott on Trusts. The whole transaction looks to the future and to a time when the death of Linda Johnson should occur. There is no magic in the use of the word "trust" as a background for the refrain "in

the event of my demise" which recurs in five of the eight paragraphs of the declaration.

The property in question constituted the entire estate of Linda Johnson. She continued to occupy the premises although she reserved neither a life estate nor the power to revoke the transaction in either the deed or the declaration of trust. The omission of any assurance of her right of occupancy is wholly consistent with a belief that she was not placing the title of her property beyond her control and with the fact that no authority with respect to the property was vested in Mary L. Kelley until the death of her mother.

It should also be noted that paragraphs 3 and 4 of the trust declaration provide for distribution to children of deceased beneficiaries and that if any of the beneficiaries named in the declaration die without leaving children surviving them, the share of the deceased beneficiary is to be divided among the others. These provisions are wholly consistent with a testamentary disposition of the property and with an intention on the part of Linda Johnson that no present interest in the property was vested in the beneficiaries at the time of the execution of the so-called trust declaration.

We can reach no other conclusion with respect to the intention of Linda Johnson than that the deed was not intended to give the beneficiaries a present interest in the property, but was to be held "in escrow" and unrecorded until the death of the grantor. It was clearly her intention that upon her death both the deed to Mary L. Kelley and the trust declaration should become effective and the trustee would then record the deed and proceed to carry out the terms of the so-called trust. This arrangement was purely testamentary and gave the beneficiaries no interest in the property, either legal or equitable, prior to the death of the owner. Mary L. Kelley violated the terms of the agreement and recorded the deed which she had agreed to hold "in escrow" until after her mother's death. Her mother's demand for a reconveyance resulted in the deed by Mary L. Kelley and her husband to Linda Johnson, dated March 11, 1935. At that time the beneficiaries of the trust declaration had no interest in the property whatsoever and the deed operated to convey

any interest that Mary L. Kelley may have acquired in it and restore the record title to Linda Johnson, who later deeded the premises to Esther J. Weldy in whose favor the trial court rendered judgment.

The judgment appealed from is affirmed.

BURKE, SATHRE, CHRISTIANSON and GRIMSON, JJ., concur.