[File No. 7319]

ADELHEID SILBERNAGEL, Respondent, v. JOHN J. SILBERNAGEL, Anna Kuhn, Eva Mitzel, Malonia Werlinger, Rosa Silbernagel, Magdalena Schumacher, Ida Silbernagel, Marianna Daschle, Jacob Silbernagel, Anton Silbernagel, Adam Silbernagel, and John J. Silbernagel as Administrator of the estate of Margaret Silbernagel, also known as Margaretha Silbernagel, Deceased, Appellants.

(55 NW2d 713)

Opinion filed Nov. 25, 1952

*August Doer* and *Rittgers, Hjellum* and *Weiss,* for appellant.

*Charles Coventry* and *Robert Chesrown,* for respondent.

GRIMSON, J. This is an action brought to determine adverse claims. The plaintiff claims ownership of the Northeast Quarter of Section Twenty-three (NE¼ Sec 23) Township One Hundred Thirty-three (133), North, Range Seventy-three (73) West of the 5th P.M. by virtue of a deed from her mother, Margaretha Silbernagel. The defendants are the brothers and sisters of the plaintiff and the administrator of Margaretha Silbernagel's estate. Seven of the defendants answer and allege that the deed under which plaintiff claims was never delivered but that it was merely a testamentary writing and invalid; that the land in question is a part of their mother's estate and that each of the parties as her heirs are the owners of an undivided one-twelfth share or interest in said land. Five of the defendants defaulted. The trial court found for the plaintiff and quieted title in her. The answering defendants appeal and demand a trial de novo.

It appears from the evidence that Margaretha Silbernagel was

a widow with twelve living children. That her husband died in 1926; that she was the owner of considerable land in Township One Hundred Thirty-three, North, of Range Seventy-three west. From 1926 until 1935 Margaretha, Peter, a crippled son, and Adelheid, a daughter, the plaintiff in this action, lived on the farm. Plaintiff was of age at the time. Adam, a son, assisted them until 1928. All of the other children had married and left the farm. In 1935 Margaretha, Adelheid and Peter moved to Napoleon where Margaretha bought a house for $650.-00 in which they lived and which she afterwards, in 1937, deeded to plaintiff. Peter died in 1939. The plaintiff lived with her mother until her mother died in October 1950. She took in sewing and at times worked away from home. Plaintiff claims to have used the money she earned for the support of her mother. On Dec. 8, 1947, Margaretha was declared incompetent and placed under guardianship. During the last two years plaintiff was allowed from $85.00 to $100.00 per month out of guardianship funds with which to run the house and buy provisions and clothes. For the last three years she took entire care of her mother. The mother, Margaretha, died intestate.

In 1939 Margaretha talked to Rudolph Hochalter, the Register of Deeds of Logan County regarding the division of her land among her children. On Oct. 3, 1939 she came to his office and asked him to draw up deeds for a different portion of her land to each child. After warranty deeds were drawn up she executed and acknowledged them before Mr. Hochalter. She then gave them to Mr. Hochalter with instructions to keep them in a safe place and deliver them after her death to the grantees named in the deeds. She and her guardian had possession of the lands until her death. There is no evidence that she tried to sell or encumber any of these lands after the execution of these deeds. It is under one of these deeds that the plaintiff claims title.

A year or more later Margaretha Silbernagel came back to Mr. Hochalter and asked for the deed in which plaintiff was grantee. She took the deed with her and afterwards destroyed it. She also had Mr. Hochalter make an alteration in two other deeds transferring a 40 acre tract from one to the other. The

one in which she eliminated 40 acres she took with her and delivered to her son, Jacob who accepted it and had it recorded. The deed to which she added the 40 acres she had redrawn and returned to Mr. Hochalter for safekeeping and delivery according to the original instructions.

Our code provides, Sec. 47–09 NDRC 1943: "Although a grant is not actually delivered into the possession of the grantee, it is yet to be deemed constructively delivered in the following cases . . . 2. When it is delivered to a stranger for the benefit of a grantee and his assent is shown or may be presumed."

It has been uniformly held that a deed deposited with a third person for delivery to the grantee upon the grantor's death, will operate as a valid transfer of title as of the time of the deposit with the third person provided the grantor intends irrevocably to vest title in the grantee and surrenders control over the deed. 26 CJS, Deeds, Sec. 46, p 247; 16 Am Jur, Deeds, Sec. 127, p 509; Annotation 52 ALR 1223. In Arnegaard v. Arnegaard, 7 ND 475, 75 NW 797, 41 LRA 258, this court, speaking through Judge Corliss, lays down the rule as follows: "It is now a thoroughly established rule that, if the grantor parts with all control over the deed at the time of its delivery to the third person, the delivery is good, and the title passes to the grantee, although the delivery is not to take place until after the grantor's death." See also McGuigan v. Heuer, 66 ND 710, 268 NW 679; Davis v. John E. Brown College, 208 Iowa 480, 222 NW 858; Boone Biblical College v. Forest, 223 Iowa 1260, 275 NW 132, 116 ALR 67; Eddy v. Pinder, 131 Me 139, 159 Atl 727; Stalting v. Stalting, 52 SD 309, 217 NW 386; Jorgenson v. Jorgenson, 74 SD 239, 51 NW2d 632; Kokomo Trust Co. v. Heller, 67 Ind App 611, 116 NE 332.

An essential element in such delivery is the intention of the grantor which is mainly a question of fact to be determined from all the evidence, in each particular case. Arnegaard v. Arnegaard, supra; O'Brien v. O'Brien, 19 ND 713, 125 NW 307; Magoffin v. Watros, 45 ND 406, 178 NW 134; McGuigan v. Heuer, supra; Perry v. Erdalt, 59 ND 741, 231 NW 888.

If Margaretha Silbernagel intended an absolute delivery of the deed to plaintiff by depositing it with Mr. Hochalter for de-

livery to grantee after her death then the deed transferred valid title to the land described subject only to Margaretha's life estate. If the deposit of the deed to plaintiff was made subject to her change of mind and control then the deed is merely a testamentary writing and ineffective as it was not executed as a will.

The intent of Margaretha Silbernagel when she executed these deeds and deposited them with Mr. Hochalter must be determined from an analysis of the evidence and circumstances shown.

Mrs. Silbernagel had evidently been contemplating the division of her property amongst her children. She had talked to Mr. Hochalter, the register of deeds of her county about it. Finally she came to his office and asked him to prepare the deeds. There is no testimony that he was related to Mrs. Silbernagel or in any way interested in her affairs. There is in evidence a plat he drew at the time showing sections 14, 15, 16 and 23 in Township 133 North, Range 73 and marking the names of her different children on different portions of land in those sections. There is also listed on that exhibit the names of the children. Mr. Hochalter testified: "Well, she came in and she told me that she was ready to prepare those deeds and we sat down and she figured out how she was going to divide it and I drew the deeds accordingly. She divided it to each one of the children and she gave a deed to each of the children, a specific piece of land." The deeds were all warranty deeds. In all seven or eight deeds were prepared. Margaretha Silbernagel then executed said deeds and acknowledged them before Mr. Hochalter, Register of Deeds. One of these deeds was for the Northeast Quarter (NE¼) of Sec. 23, Township 133, North, Range 73 West. In that deed the plaintiff was the grantee. Mr. Hochalter testified: "She gave them to me and told me to keep them for her, put them away for her. * * * She told me to deliver the deeds to the different children, to the grantees, after her death." Mr. Hochalter put them in an envelope and put her name on it. He further testified: "Q.—Did you make any notation on that envelope? A.—Just her name, just merely left for safekeeping." With regard to the deed to plaintiff Mr. Hochalter testified: "Well, I believe she said that Ida (Adelheid) was going to live with her, stay with her. I do not remember anything else that was said."

On examination by the court Mr. Hochalter testified: "She gave them to me and she said, '*You are to keep these in safekeeping, in a safe place, until after my death, and then you are to deliver them to each of the grantees,*' her children." "Q.—That is as near as you remember the conversation? A.—Yes." On cross examination defendant's attorney asked of Mr. Hochalter: "Was anything said at the time these deeds were prepared and left with you that Margaretha Silbernagel reserved the right to withdraw them from your possession? * * * A.—No."

Error is assigned because Mr. Hochalter was not allowed to say what was his understanding of the transaction as to whether Mrs. Silbernagel could withdraw the deeds. Such questions called for Mr. Hochalter's conclusions in that regard and the objection to them was properly sustained.

In the beginning of his testimony Mr. Hochalter said that Mrs. Silbernagel had told him "To keep them (the deeds) *for her,* put them away *for her.*" However, on examination by the court Mr. Hochalter's testimony omits anything indicating that the deeds were to be kept for Mrs. Silbernagel. The trial court who participated in this examination and observed Mr. Hochalter while testifying was apparently impressed by his last statement of Mrs. Silbernagel's instructions to him and the court found the facts according to that statement. If there is any conflict in Mr. Hochalter's testimony in this matter that was resolved by the trial court in favor of an absolute delivery which finding we will not disturb unless it is clearly erroneous. Arnegaard v. Arnegaard, supra. The testimony indicates a carefully considered transaction, deliberately planned and carried out by Mrs. Silbernagel. She reserved no right of withdrawal of the deeds. She divided her property amongst her children. That division was to be effective after her death.

In the case of Stalting v. Stalting, 52 SD 309, 217 NW 386, the directions to the depository were very similar to those in the case at bar. The grantor delivered four deeds in which his children and grandchildren were grantees to a depository with the instruction to "Keep these safely and deliver them to the grantees at my death." No conditions or reservations were included in the directions. The court held that showed grantor's

intention of making a complete and irrevocable delivery of the deeds.

After the death of Mrs. Silbernagel Mr. Hochalter testifies that he delivered the deeds that were then in his possession according to the direction of Mrs. Silbernagel to the grantees therein named, to wit: John J. Silbernagel, Anna Kuhn, Anton Silbernagel, Malonia Werlinger, Eva Mitzel, Adam Silbernagel, and Magdalena Schumacher, all of whom are defendants in this action.

The acceptance of these deeds by the grantees constitutes an assent by them to such delivery and completes their title. All of the deeds were deposited with Mr. Hochalter in one transaction and the same instructions covered them all. No attempt is being made to set aside any of the deeds so delivered.

With regard to the deed to plaintiff Mr. Hochalter testified he gave it back to Margaretha Silbernagel a year or two after its execution. He also gave back to her a deed to Jacob Silbernagel after eliminating, at her request, 40 acres from that deed and inserting those 40 acres in a deed to Adam Silbernagel which deed also may have been withdrawn. None of the other deeds were disturbed.

Answering, defendants strenuously claim that the withdrawing of those deeds from Mr. Hochalter by Mrs. Silbernagel indicates that she retained dominion and control over the deeds and that, therefore, no delivery was accomplished.

Sec. 47-0910 NDRC 1943 provides that: "Redelivering a grant of real property to the grantor, or cancelling it, does not operate to retransfer the title."

The authorities uniformly held that where a grantor has deposited a deed with a third person to be delivered to the grantee after the death of the grantor, reserving no dominion or control over the same, he cannot subsequently, by withdrawing or destroying the deed, affect a delivery thus completed. Annotation in 52 ALR 1257 and cases cited. In Arnegaard v. Arnegaard, supra, this court says: "Indeed, if the deeds were once delivered to Hyde for the benefit of the grantees, it was beyond the power of the grantor to devest the title of the grantees by regaining possession thereof, or even by destruction of the same. A

delivery passes title, and such title is thereafter as much beyond the control of the grantor as though he had never owned the land." (Citing cases.) See also 26 CJS Sec. 43 p 244.

There is some testimony relating to statements of Mrs. Silbernagel regarding those deeds made after they had been deposited with Mr. Hochalter. Objection was made to said statements as hearsay and the overruling of said objections is assigned as error. Statements of a grantor made after the delivery of a deed are admissible in a suit to enforce title thereunder when such statements support the deed but not when they are against it. Arnegaard v. Arnegaard, supra; Miller v. Meers, 155 Ill 284, 40 NE 577. Statements supporting the deed are adverse to any interest of grantor in the land and constitute an admission against grantor's interest. Statements adverse to the deed are self-serving declarations. Such statements do not come within the hearsay rule. Dinneen v. Younger, 57 Cal App 2d 200, 134 P2d 323; Whitlow v. Durst, 20 Cal 2d 523, 127 P2d 530.

Regarding the deeds that were withdrawn, Jacob Silbernagel testifies that he received and accepted from his mother (Margaretha Silbernagel) the deed from which the elimination had been made and at the same time he says that she showed him the deed to Adelheid which she had drawn out at the same time as his deed and which he says she then burned. Regarding that deed he says: "Q.—Who told you it was Ida's (Adelheid)? You said you knew it was Ida's quarter, who told you that? A.—My Ma, it was made out the same deed as I got here * * * A.—Yes, she said that was Ida's."

Margaretha Silbernagel talked with some of the children about these deeds after their execution. As to plaintiff's deed, her daughter, Anna Kuhn, testified: "She said, my mother, that she (Adelheid) works longer than the rest of them and she got the deeds all made for the children, and she get this quarter of land, she get no wages or nothing, so she give her that quarter of land."

The son-in-law of Margaretha Silbernagel, Peter Schumacher testified: "She (Margaretha Silbernagel) told me she made the deed to the Northeast Quarter of Section Twenty-three, in

Township One Hundred Thirty-three, North, Range Seventy-three West, to give it to Ida, because she stayed there longer than the rest of the girls did, * * * and she could not pay her any wages and that is why she give her that quarter section of land."

The daughter, Magdalena Schumacher testified: "Well, she (Margaretha) talked pretty near every time we visited her, different times, about her land and deeds * * * In common about all deeds, all the children."

These statements of Mrs. Silbernagel after the execution and deposit of the deeds all tend to show that she intended these deeds to be absolute. The deeds were to her children. She gave her reasons for the deed to the plaintiff. The plaintiff had lived with her and taken care of her more than had any of the other children. Plaintiff also testified to having turned the money she earned over to her mother. Objection to that testimony as immaterial was properly overruled. That testimony indicated an obligation by the mother to the plaintiff and was material on the question of Margaretha Silbernagel's motive and intent in the disposition of the land in question. Mrs. Silbernagel was giving the plaintiff this deed in consideration of the work she had performed for her and the money plaintiff had advanced her. She had talked it over with her children and given them the reason why she was deeding this to the plaintiff. Finally when she had, for some undisclosed reason, withdrawn the deed and destroyed it she said, "That was Ida's" (Adelheid) deed. She did not say it was a deed that she had intended to give to Ida in the future. She said it was Ida's deed, indicating a past delivery. The statement indicates absolute ownership of the deed in Ida. Margaretha executed no deed thereafter for the land described therein.

"It is well settled that the law makes stronger presumption in favor of the delivery of deeds in cases of voluntary settlement, especially in favor of infants, than in the ordinary cases of bargain and sale. Miller v. Meers, supra.

The learned trial judge by his decision in this case determined that it was the intention of Margaretha Silbernagel to make a complete and irrevocable delivery of the deed to plaintiff by her deposit thereof with the register of deeds. We have carefully

examined the entire record and find no prejudicial errors therein. We think the evidence fairly supports his decision.

Error is assigned by the answering defendants on the order of the district court to tax costs only against the answering defendants. A suit to determine adverse claims has been generally held by the courts to be of an equitable nature. This court has so held on numerous occasions. See O'Neil v. Tyler, 3 ND 47, 53 NW 434; Blakemore v. Cooper, 15 ND 5, 106 NW 566, 4 LRA NS 1074, 125 Am St Rep 574; Sexton v. Sutherland, 37 ND 500, 164 NW 168; Wagner v. Stroh, 70 ND 323, 294 NW 195. Allowance of costs in an equity suit is entirely discretionary with the court. Sec. 38–2610 NDRC 1943; Austad v. Dreier, 57 ND 224, 221 NW 1; State ex rel. Rusk v. Budge, 15 ND 205, 106 NW 293; 20 CJS Costs, Sec. 10, p 271; 14 Am Jur Costs, Sec. 25, p 17. In the case at bar only seven of the twelve defendants answered. The other defendants defaulted and some of them testified for the plaintiff. Certainly they were not responsible for the trial costs created in this case and it would not be equitable to tax any costs against them. Beattie v. Dimitry, 168 La 81, 121 So 581. The trial court was clearly right in taxing the costs against the answering defendant only.

The judgment of the district court is affirmed.

MORRIS, C. J., and CHRISTIANSON, BURKE and SATHRE, JJ., concur.