Earl A. EIDE, Plaintiff,

v.

Joseph TVETER, Roy Tveter, Ella Brus-
vin, Rubin Tveter, Ruth Opdahl, Esther
Tveter, Selma Tveter and Carter Oil
Company, a Corporation, Defendants.

Civ. No. 2801.

United States District Court
D. North Dakota, Northwestern Division.

Aug. 24, 1956.

C. J. Serkland, of Cupler, Tenneson,
Serkland & Leahy, Fargo, N. D., for
plaintiff.

B. L. Wilson, Bowbells, N. D., for defendants Joseph Tveter, Roy Tveter, Ella Brusvin, Rubin Tveter, Ruth Opdahl, Esther Tveter and Selma Tveter.

Robert W. Palda, of Palda, Palda & Peterson, Minot, N. D., for defendant Carter Oil Co.

REGISTER, District Judge.

This is an action to determine adverse claims to the following described real property, situated in Burke County, North Dakota:

South Half of Southwest Quarter (S½ SW¼) of Section Twenty-seven (27), Southeast Quarter (SE¼) of Section Twenty-eight (28), and the Northwest Quarter (NW¼) of Section Thirty-four (34), Township One Hundred Sixty-two (162) North, Range Ninety-three (93) West of the 5th Prime Meridian.

Jurisdiction is based upon diversity of citizenship, the plaintiff being a resident and citizen of Minnesota and all defendants (other than Carter Oil Company, a corporation) being residents and citizens of North Dakota. Said corporation is foreign to both states.

On March 1, 1948, Mr. Otto Tveter, the then owner in fee of the property involved herein, consulted his attorney, Mr. Philip R. Monson, with regard to disposition of the above described property. At that time both Mr. Tveter and Mr. Monson were residents of the city of Fergus Falls, Minnesota. When Mr. Tveter went to see his attorney, his intention was to make a will. He had recently consummated his third marriage. Following the conference between Mr. Tveter and Mr. Monson, the latter prepared an instrument, a warranty deed in form, conveying said lands to the Tveter children who were the issue of his first marriage, and who are defendants in this action. The conveyance was "subject to the reservation of a life estate in the grantor herein for and during his natural lifetime"; the habendum clause was "subject to said life estate"; and the covenant of warranty was also "subject to the reservation herein". The instrument was executed by Otto Tveter only, and provided as follows:

"That none of the above described land is the home or residence, and sometimes known as the 'homestead', of the party of the first part and his wife, and that the party of the first part has good right and title under the laws of the State of North Dakota to make the within conveyance without his wife joining therein."

The instrument complies with all statutory requirements for deeds under the laws of the State of North Dakota.

After this instrument was prepared by Mr. Monson, Mr. Tveter executed and acknowledged the same, and instructed Mr. Monson to send it to the Register of Deeds of Burke County, North Dakota, and have the latter record it in his office. This was done, and said instrument was filed for record in said office on March 4, 1948, and duly recorded therein in Book "50" of Deeds on Page 392. The instrument was thereafter returned to Mr. Monson, who placed it in an envelope, sealed the envelope, wrote thereon "Deed to my children of N. D. real Estate 3–15–48 PRM.", gave it to the grantor who thereupon placed it in his safety deposit box in a bank in Fergus Falls, where it remained until a short time prior to this litigation. None of the grantees was, at that time, notified or otherwise informed of the execution or recording of the instrument. In January or February, 1949, Mr. Joseph Tveter, one of the grantees named in the instrument, became aware of its existence by reason of a tax notice sent to him by the treasurer of Burke County. Later, and prior to June, 1949, Mr. Joseph Tveter and his attorney checked the records on file in the office of the Register of Deeds of said Burke County, in course of preparation of a coal mining lease covering the lands involved, and discovered the record of the instrument. Mr. Joseph Tveter testified that he knew his brothers and sisters (the other grantees in said instrument) had, by June, 1949, knowledge of the existence of the deed

executed by their father on March 1, 1948. During June, 1949, Joseph Tveter visited his father in Fergus Falls, the purpose of such visit being the execution of a coal mining lease. During that visit, a discussion was had between Joseph Tveter and his father concerning said lands, and, with reference to the instrument involved, Mr. Otto Tveter stated that he had made a "will". Upon returning to North Dakota Mr. Joseph Tveter caused the coal mining lease to be prepared, which lease was executed by both Otto and Joseph Tveter, and all income derived from this lease (which was in effect from 1949 to 1954) was turned over to Otto Tveter.

In the spring of 1951 the Carter Oil Company sought an oil and gas lease from Otto Tveter on the 400 acres hereinbefore described. Upon being approached by Carter Oil Company, through correspondence, Mr. Tveter sought the advice of his attorney, Mr. Monson, relative to the terms, etc., of the lease offered by Carter Oil Company. Mr. Monson thereupon advised his client, Mr. Tveter, that he (Mr. Monson) thought he could get a better price from a friend of his. Thereafter, copies of an oil and gas lease, and draft, forwarded to Mr. Tveter by Carter Oil Company were returned to the sender by Mr. Monson.

Subsequently, and commencing on May 11, 1951, a series of letters was exchanged by Mr. Monson and Mr. Earl A. Eide, the plaintiff herein, which letters culminated in the preparation of an oil and gas lease by Mr. Monson. This lease was executed on June 4, 1951, and contains the signatures of Earl A. Eide, the lessee named therein, and Otto Tveter and Mabel Tveter, his wife, the lessors named therein. In all the letters which passed between the plaintiff and Mr. Monson, no mention was made of the deed executed by Mr. Tveter in March of 1948. The plaintiff apparently acted on the assurances of Mr. Monson regarding ownership of the property, and did not discover the deed until after the lease was executed and the records were checked. Following the discovery of the recorded deed, it was apparently agreed upon between Mr. Eide, Mr. Monson and Mr. Otto Tveter that a confirmation, or ratification, of the oil and gas lease should be secured. Consequently, Mr. Monson prepared, for the signatures of the named defendants (excepting Carter Oil Company), an instrument entitled "Confirmation, Ratification and Consent to a Certain Oil, Gas and Mineral Lease Executed by Otto Tveter and Mabel Tveter, His Wife, of the First Part, to Earl A. Eide of St. Paul, Minnesota, of the Second Part". The children, in August of 1951, refused to sign such instrument.

In a letter from Mr. Monson to Mr. Eide, dated August 8, 1951, is found this statement:

"Of course, if they do not want to sign under any conditions, why, of course, Mr. Tveter is willing to refund you all of the money, and I presume that we will have to execute a cancellation of the lease."

Mr. Tveter has testified that he has, on several occasions, offered to return to Mr. Eide the amount paid for the lease, and has, except for the initial sum, refused to accept any delay rentals due him under the terms of the lease.

Thereafter, and after the children were aware of the lease between their father, Otto Tveter, and Mr. Eide, Carter Oil Company, on September 23, 1951, entered into an oil and gas lease covering the described lands with the said children. All rentals paid under this lease, together with a bonus, were turned over to Mr. Otto Tveter.

Prior to his retirement in 1938, said premises had been farmed by Mr. Otto Tveter; on March 1, 1948, and at all times thereafter said premises were occupied by two of the defendant children, under a farm rental agreement.

Plaintiff contends as follows: That the instrument executed by Mr. Otto Tveter on March 1, 1948, was testamentary in character, and in effect was a will and not a deed; that if said instrument was a deed, it was never delivered; and that the oil and gas lease executed and

delivered by Mr. Otto Tveter and his wife to the plaintiff herein is a valid lease and in full force and effect. Defendants contend that said instrument was a deed, that the same was delivered, and that the oil and gas lease aforesaid was and is without legal effect, for the reason that, at the time of the execution and delivery thereof, the said Otto Tveter was a life tenant only in the premises involved.

■■ As to the first question presented—whether the instrument is a deed or a testamentary disposition—it is uniformly held that the intent of the maker controls; the ultimate object of inquiry is the intent of the maker. O'Brien v. O'Brien, 19 N.D. 713, 125 N.W. 307; Johnson v. Weldy, 79 N.D. 80, 54 N.W. 2d 829; Silbernagel v. Silbernagel, 79 N.D. 275, 55 N.W.2d 713; and Trumbauer v. Rust, 36 S.D. 301, 154 N.W. 801. What then, was the intent of Mr. Otto Tveter, the maker of the instrument in question? According to his own testimony, he went to his attorney's office to have his will drawn. Mr. Monson was a man whom he trusted, and in whom he placed great confidence. He discussed his problem with him. It is fair to assume that Mr. Tveter was fully advised concerning the action to be taken. As the result of the conference, a warranty deed was prepared, under the provisions of which Mr. Tveter retained a life estate. Mr. Tveter's purpose is clear, both from the facts and circumstances, and from his own testimony. He had just remarried; he wanted to be sure the property involved would go to his children who were the issue of his first marriage. He also wished to receive the income from crop rentals during his lifetime. While it is evident from his testimony that Mr. Tveter does not have in mind the technical differences between a will and certain deeds, it appears to the satisfaction of this Court that he intended to do exactly what was done. The form of the instrument is that of a deed. Under its provisions he conveyed the property involved "subject to the reservation of a life estate in the grantor herein for and during his natural lifetime". The reservation of a life estate was repeated in the instrument. He also states that the land described is no part of his "homestead", then states that he may therefore "make the within conveyance without his wife joining therein". It may be considered common knowledge that a wife would not have to join in the execution of a will. There is no evidence that the property involved herein constituted all of the property then owned by the grantor, as would likely be the case had he intended it to be his will. " * * * The reservation of a life estate in the grantor raises a strong presumption that it was intended that the title should immediately vest in the remainderman, for the reason that if such intention had not existed there would be no reason for the reservation." Sargent v. Roberts, 265 Ill. 210, 106 N.E. 805, 809; and 26 C.J.S., Deeds, § 183, p. 592.

■ After said instrument was executed and acknowledged, Mr. Tveter left it with Mr. Monson with instructions to have it recorded, which instructions were promptly followed, after which the recorded deed was returned to Mr. Tveter. There is absolutely nothing to justify an inference that, in the action taken by Mr. Tveter, he intended to make the same subject to his change of mind and control; in fact, the unqualified instruction to Mr. Monson to have the instrument promptly placed of record indicates an intention on the part of Mr. Tveter that such action should be irrevocable and absolute. After Mr. Monson received the recorded deed, he placed it in an envelope, plainly marked it as a "Deed" and gave it to his client. "The delivery of a deed for record, by one who has executed and acknowledged it, with unqualified instructions to record it, will raise the presumption in the absence of any rebutting circumstance that the grantor intends to part with his title." 26 C.J.S., Deeds, § 187, p. 600. "The sufficiency of evidence to overcome a rebuttable presumption of delivery depends largely on the circumstances of the particular case.

Clear and convincing evidence is required to rebut a presumption arising from the execution, acknowledgment, or recording of a deed". 26 C.J.S., Deeds, § 204, p. 637.

Certain testimony of Mr. Tveter and other facts in evidence are cited by plaintiff as evidence of a contrary intention.

Plaintiff contends that the grantor continued to deal with the land as his own, and rented the land to his children, and received income from a coal mining lease and also bonus and delay ·rentals under the oil and gas lease with Carter Oil Company.

In determining the question involved, consideration must be given to the fact of the relationship of the parties. At the time of the execution of the instrument, two of the grantees were physically in possession of the land; such possession continued under a rental agreement with the grantor. The testimony of Mr. Joseph Tveter concerning the receipt by the father of the bonus from the Carter lease is as follows:

"Q. And did you turn that $2,000. over to your father? A. Yes. We all agreed we should do that."

He also testified the delay rentals were turned over to the father, as was the income from the coal lease. The fact that the children turned over such bonus and delay rentals to the father after they had knowledge of their legal rights in no way appears to be inconsistent with the Court's conclusions. All of the evidence indicated a close bond of affection between the father and children. The father, after retirement, rented the land to two of the children; he received rent therefor; he executed and had recorded the deed to his children; at the time of the coal lease and the Carter lease the children knew of their father's acts, and it is only reasonable that they should feel that the income from such leases should be turned over to the father.

Certain testimony of Otto Tveter is likewise construed by plaintiff as showing a contrary intent. It would seem that such testimony should reasonably be construed to mean that Mr. Tveter considered that he, and only he, was entitled to receive the rentals from the land, but that this was the only right retained by him.

Plaintiff places strong emphasis upon the fact that Mr. Tveter maintained a certain secrecy about the execution of this instrument, a secrecy "commonly associated with the making and safekeeping of a will". The circumstances readily explain the reason for this. He did not tell his wife and apparently did not want her to know about this particular act. His children, the grantees, were the beneficiaries; the land was in the possession of two of the children, from whom he was receiving his rental income; and this relationship he desired to continue. He had accomplished the desired purpose and apparently considered nothing further was advisable.

That Mr. Monson knew this instrument was a valid deed and effective as such is beyond question. In his letter to the plaintiff of August 8, 1951, concerning the execution by the grantees of a ratification of the lease, he says: "Of course, if they do not want to sign under any conditions, why, of course, Mr. Tveter is willing to refund you all of the money, and I presume that we will have to execute a cancellation of the lease"; and "Mr. Tveter did this in the very best of faith and so did I, and while I drew that deed for him, it had completely gone out of my mind, and I know you will appreciate that those things do happen." While it is true that the intention or understanding of Mr. Monson is not at issue here, it is a fair presumption that the instrument he prepared, after conference with his client, was pursuant to the client's instructions and in accord with the client's expressed intention, and should, therefore, merit consideration by the Court.

It is true that the grantor and his wife later executed the lease to plaintiff. Great reliance is placed by plaintiff upon that fact, as indicating an intent on the part of Mr. Otto Tveter to retain complete title to and control over the premises.

Some time prior thereto, Mr. Otto Tveter had received a letter and proposed lease from the Carter Oil Company. This he promptly took to his attorney, Mr. Monson, who should have been deemed familiar with the condition of the title, and with the rights of Mr. Tveter. Mr. Monson informed Mr. Tveter he thought he could get a better price, and began the negotiations resulting in the lease to plaintiff. During some of the conferences concerning the leasing, Mr. Otto Tveter's wife was present. No mention was made of the deed. Mr. Monson states he had completely overlooked it. Mr. Tveter doubtless assumed that, in advising him concerning such lease, he could safely follow his attorney's advice. Mr. Tveter doubtless also assumed that any such agreement he should enter into, after consultation and advice from his attorney would be consistent with his legal rights. Promptly after being advised of the necessity of a ratification by the grantees, and their refusal to execute the same, then Mr. Tveter offered to return the money paid by plaintiff, and during all times thereafter has not only taken no action to annul or set aside such deed, but has recognized such instrument as being a delivered and effective deed.

■ In the opinion of this Court the instrument executed by Mr. Otto Tveter on March 1, 1948, was a deed, conveying the title to said premises to the grantees therein, but subject to a life estate in favor of the grantor.

Plaintiff further contends that there was not a valid and effective delivery of the deed.

■ It is a general rule, and in this state required by statute, that it is essential to the validity of a deed that there should be a proper and sufficient delivery of the instrument. The applicable statutory provisions in North Dakota are as follows:

Section 47–0906, NDRC 1943.

"Delivery of Written Transfer: Requirement; Presumption From Execution. A grant takes effect so as to vest the interest intended to be transferred only upon its delivery by the grantor and is presumed to have been delivered at its date." Section 47–0909, NDRC 1943.

"Constructive Delivery. Though a grant is not actually delivered into the possession of the grantee, it is yet to be deemed constructively delivered in the following cases:

"1. When, by the agreement of the parties, the instrument is understood to be delivered at the time of execution and the circumstances are such that the grantee is entitled to immediate delivery; or

"2. When it is delivered to a stranger for the benefit of a grantee and his assent is shown or may be presumed."

■ "A deed is of no effect unless it is delivered. Delivery of a deed may be by words or acts or both combined. An indispensable element to be considered in determining whether a deed has been delivered is the intention of the grantor", and, "The fact that the deed was immediately returned to the grantor may be considered as a circumstance bearing upon whether or not there was a delivery. But if delivery actually took place the return of the deed to the grantor for some specific purpose such as for safekeeping did not destroy the effect of the legal delivery." Keefe v. Fitzgerald, 69 N.D. 481, 288 N.W. 213, 214.

■ "Words or conduct of the grantor evidencing his intention to render his deed presently operative and effectual so as to vest the estate in the grantee, and to surrender control over the title, is necessary and sufficient to constitute a valid delivery." 26 C.J.S., Deeds, § 41, p. 233; Shuck v. Shuck, 77 N.D. 628, 44 N.W.2d 767.

"The execution and recording of a deed create a presumption of sufficient delivery and fix the time when the deed became effective." Schenck v. Dibel, 242 Iowa 1289, 50 N.W.2d 33, 35. There is a presumption of delivery from the recording of a deed which can only be

overcome by clear and satisfactory evidence. Burch v. Nicholson, 157 Iowa 502, 137 N.W. 1066. "The recording of a deed ordinarily creates a rebuttable presumption of its delivery to, and its acceptance by, the grantee." 26 C.J.S., Deeds, § 187, p. 598.

 Many of the statements hereinbefore made with reference to the construction of the instrument involved, are applicable as to the intent of the grantor concerning delivery. The deed was made for the benefit of the grantees; it was promptly recorded pursuant to the unqualified instructions of the grantor; and acceptance by the grantees is evidenced by general acts of ownership with respect to the property. Considering all of the circumstances under which the grantor's actions were taken, and the fact of the relationship of the parties to the deed, and subsequent acts and conduct of all thereof, it appears to the Court that all of the grantor's acts are wholly consistent with a delivery with intent to immediately pass title. This Court is of the opinion that the evidence establishes an effective delivery and acceptance of the deed.

The final question before this Court is: May a life tenant, without the ratification of his remaindermen, execute a valid oil, gas and mineral lease of the property?

Plaintiff concedes that, if the instrument involved is a valid and effective and delivered deed, the purported lease to plaintiff is void. This is in accord with the great weight of authority. "* * it is the uniform rule that the life tenant or the tenant for years is not privileged to take oil and gas, nor has he the power to create such privilege in others by way of lease of the land for oil and gas purposes." Summers, Oil and Gas, Vol. 2, Sec. 223; also see, 24 Am.Jur. 527.

It is the opinion of this Court that the purported lease to the plaintiff is void and of no legal effect.

Plaintiff is entitled to a refund of the $601 paid for the lease. Proof of repayment thereof to plaintiff, or tender thereof, to plaintiff, shall be filed with the Clerk of this Court prior to entry of judgment herein.

For the reasons stated, judgment will be for the defendants. Findings, conclusions, order for judgment, and judgment will be prepared by counsel for the defendants in accordance herewith. It will be so ordered.